Argued April 23, reversed May 21, 1973

# FREDRICKSON, *Respondent, v.* GRANDMA COOKIE COMPANY, *Appellant.*

509 P2d 1213

*Noreen K. Saltveit,* Portland, argued the cause and filed the briefs for appellant.

*Nicholas D. Zafiratos,* Astoria, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FOLEY, J.

This is a workman's compensation case. The hearing officer denied the claim of a work-connected back injury on the basis of claimant's failure of proof as to work-connection. The Workmen's Compensation Board reversed the hearing officer in a two-to-one decision and the trial court affirmed the Board. The employer and its insurer appeal. We reverse.

Claimant at hearing time was a 52-year-old Grandma Cookie Co. route salesman who had an 11-year history of low back pain. It is clear that he did have disability to his back on April 23, 1971, the date he alleges he had an on-the-job accident while loading his truck.[1] The issue is whether the disability did, in fact, result from accident or whether it came on either insidiously or was otherwise triggered.

Claimant had filed a claim for back trouble in February 1971 while working for another employer. He did not file any claim for the April 23, 1971, episode until June 7, 1971. Meanwhile, on May 11, 1971, he was examined in Portland by George S. Barton, M.D., and John Raaf, M.D., relative to a possible back operation. He gave them a history of several years of recurring back pains, becoming more persistent in recent years. Dr. Raaf's history includes the statements: "There has never been any injury that he is aware of"; and "The [back] pain came on insidiously without any history of accident * * *." On June 9, 1971, Dr. Raaf performed exploratory surgery for a protruded disk. He found no protruded intervertebral disk but found degenerative disk disease and an unstable lumbar spine. Dr. Short, an orthopedist, per-

---

[1] Some of the claim forms signed by claimant indicate the time of accident as 7:30 a.m. At the hearing claimant testified it was in the evening after 6 p.m.

formed a spinal fusion on the same date. A postscript to Dr. Raaf's report noted that about the time of discharge from the hospital after the surgery, claimant advised Dr. Raaf "that he had sustained an injury in April when he was loading his truck and it was necessary for his son to help him finish. Under these circumstances, if he did strain his back in April, one would have to consider this due to an accident." Claimant attempted to explain the inconsistencies and his failure to mention the accident earlier by saying they were due to the fact that his wife had a heart attack early in 1971 and also because he was desirous of continuing to work on account of financial problems.

Thus, whether the claimed unwitnessed accident did, in fact, occur, rested upon the credibility of the claimant. The hearing officer responded to it as follows:

"\* \* \* \* \*

"There appear to be too many discrepancies and inconsistencies in this case to be passed off as resulting from claimant's bad memory, or from a desire to 'sweat out' the back trouble because of financial problems. I believe that claimant did have disability on or about April 23, 1971. It may have been more severe than, and different from, prior episodes. However, I remain unconvinced that there was an on-the-job accident such as a slip and fall as claimant asserts. It may have been simply insidious, it may have been sneeze-triggered.

"As to the discrepancies, it seems difficult to believe for example that claimant would go to Portland, discuss plans for a possible major operation with a doctor, and, a month later go to the hospital for an operation, and not reveal an incident the consequences of which were so severe as to render claimant substantially unable to do his job for several days.

"More than one claim form, made at different times, indicate an accident time of 7:30 a.m. (Joint Exhibits 5, 9 and 13). At the hearing claimant testified that he, on April 23, 1971, had done his route, including Seaside, had returned to the warehouse at about 5:30 or 6:00 p.m., had loaded part of the truck when he slipped and fell. Claimant's son corroborated the evening aspect by testifying that he was home from school and received a call from his dad saying he'd slipped and that he (the son) went to the warehouse.

"There were some minor omissions and inconsistencies such as claimant's failure, at the hearing to remember the February 1971 report of back trouble (Joint Exhibit 1) and the claimant's failure, during the doctor consultation of May 31, 1971 regarding his cold and congestion problem, to mention any back trouble if it were bad enough to require claimant's supervisor's assistance in doing his job for several consecutive days.

"The claimant is a very pleasant diligent gentleman who has experienced some unfortunate circumstances. He's had many health problems including a long-time bad back, his wife had a heart attack in early 1971 and the employer building had burned the year before. That he has remained as productive and stable as he has is commendable.

"Lifting and carrying cookies for 20 years may well have caused or contributed to his degenerated back condition. However, I conclude that claimant has failed to prove by a preponderance of the evidence that his back disability arose out of or in the scope of his employment.

"* * * * *"

■■ We review de novo, but have consistently held that we give "* * * considerable weight [to the opinion of the hearing officer] on matters involving the credibility of witnesses who have testified before him."

*Etchison v. SAIF,* 8 Or App 395, 400-401, 494 P2d 455 (1972). Here the hearing officer had the advantage of seeing and hearing the witnesses, and particularly of seeing and hearing the claimant. Although we are not bound by his findings, *Etchison v. SAIF,* supra, they are persuasive and we adopt his determination that the claimant failed in his proof.

Reversed.