Argued January 21, affirmed February 5, reconsideration denied
March 6, petition for review denied April 9, 1974

REED (No. 72 4749), *Appellant, v.*
DEL CHEMICAL CORPORATION, *Respondent.*

518 P2d 679

*Rolf T. Olson,* Salem, argued the cause for appellant. With him on the briefs were Dye & Olson, Salem.

*Richard W. Butler,* Eugene, argued the cause for

respondent. With him on the brief were Thwing, Atherly & Butler, Eugene.

Before SCHWAB, Chief Judge, and FOLEY and TANZER, Judges.

TANZER, J.

This workmen's compensation appeal deals with the issues of whether and to what extent claimant is entitled to recover penalties from the employer pursuant to ORS 656.262 (8).[1]

Claimant sustained a back injury on March 10, 1970. The claim was initially dismissed on the grounds that claimant had not carried the burden of proof to establish his claim and had not given timely notice to the employer. Following a remand from the circuit court, claimant proved that a compensable injury had in fact occurred. On December 10, 1971 the hearing officer ordered the employer to "accept the claim and pay to claimant all the compensation to which he is entitled under the Workmen's Compensation Act." The order specified neither the extent of claimant's disability nor the time period for which disability benefits were to be payable.

Thereafter, the employer's insurance carrier requested medical information regarding claimant's status. The information furnished showed that claimant had been examined by Dr. John Bascom on June

---

[1] ORS 656.262 (8):

"If the fund or direct responsibility employer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, it shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382."

30, 1970 and December 18, 1970, and that it was Dr. Bascom's opinion that claimant was unable to do work involving physical effort between those dates. Dr. Bascom further opined that claimant's disability would extend for several months beyond that date if further active treatment was not taken. The medical information furnished to the carrier also showed that claimant was last treated in Dr. Bascom's office on January 11, 1971, at which time he was referred to Dr. Patrick Golden. Claimant apparently never went to see Dr. Golden pursuant to the referral.

On December 13, 1971, claimant, through his attorneys, demanded payment of temporary total disability benefits from June 30, 1970 (the date claimant was first examined by Dr. Bascom) until such time as claimant's condition might become medically stationary. Based on the medical information supplied to it, the employer's carrier agreed to compensate claimant for the period from June 30, 1970 through **January 11, 1971** (the date of claimant's last treatment in Dr. Bascom's office), but refused to compensate him beyond that time because there was no medical information as to his condition.

On January 3, 1972 claimant saw Dr. Golden who advised the employer's carrier that claimant continued to have symptoms similar to those he had complained of at a previous visit on July 6, 1970, and that claimant was, in his opinion, temporarily disabled from regular work. That information was followed by Dr. Golden's reports of January 30, 1972 and February 11, 1972, which further specified the precise medical nature of claimant's disability. Thereafter, the employer's carrier began paying temporary total disability benefits from January 3, 1972, but still refused to pay benefits from January 11, 1971 to January 3, 1972 on

the ground that claimant had given no indication of medical status during that period.

In addition to dissatisfaction with the period for which compensation was paid, claimant also complained to the employer's carrier concerning the manner of payment. The carrier paid claimant's claim, as it apparently did most or all of its insurance claims, by sight drafts, which claimant found to be difficult to cash. Claimant's attorneys requested that the carrier make payments by bank check rather than sight draft, but the carrier continued to pay with sight drafts.

On January 11, 1972 claimant filed a request for a hearing on the issues of whether he was entitled to benefits for the period in dispute and whether the employer had unreasonably refused or delayed payment. Claimant testified at the hearing that he had not sought treatment during the period for lack of funds, but that his condition had remained constant. The hearing officer believed him and we accept his finding of credibility. *Fredrickson v. Grandma Cookie Co.,* 13 Or App 334, 509 P2d 1213 (1973). The hearing officer found that claimant was entitled to temporary total disability benefits for the disputed period (January 11, 1971 to January 3, 1972), and in addition assessed a penalty equal to 25 percent of such benefits because of the carrier's refusal to pay for that period. The hearing officer declined, however, to assess any penalty for the use of sight drafts as a mode of payment.

On review, the Workmen's Compensation Board affirmed the hearing officer's order insofar as it ordered payment of compensation for the previously disputed period, but reversed the assessment of the 25 percent penalty on the basis that the record did not support a finding that the carrier's refusal to pay was

unreasonable. While disapproving the use of sight drafts to pay workmen's compensation claims, the Board agreed with the hearing officer that the mere use of such drafts did not cause unreasonable delay in the payment of compensation.[2]

The circuit court affirmed the Board's order on review, except that the court found that the use of the sight drafts constituted unreasonable delay in payment and therefore assessed a penalty equal to five percent of the benefits payable between January 11, 1972 and April 17, 1972. Claimant has appealed to this court, asking that we restore the 25 percent penalty which was assessed by the hearing officer and that we increase the penalty for payment by sight draft from five percent to the full 25 percent allowed under ORS 656.262 (8). The employer did not cross-appeal.

■ With regard to the issue of the employer's carrier's refusal to pay disability benefits for the disputed period, we agree with the Workmen's Compensation Board and the circuit court that the record does not reflect an unreasonable refusal to pay. The hearing officer's first order of December 10, 1971 did not specify for what period benefits must be paid. Thus this case is unlike *Jackson v. SAIF,* 7 Or App 109, 490 P2d 507 (1971), where the State Accident Insurance Fund unilaterally terminated payments in direct violation of a hearing officer's specific order. Here, the order generally required payment of all compensation "to which [claimant] is entitled under the Workmen's Compensation Act."

---

[2] We note that on January 12, 1973 the Workmen's Compensation Board issued a bulletin (Bulletin No. 86) to insurance companies, self-insured employers, and the State Accident Insurance Fund directing that sight drafts may no longer be used to provide compensation to claimants.

There is no suggestion of arbitrariness or bad faith. Until the hearing officer issued a specific order regarding the disputed time period, the issue was fairly debatable. The insurer paid for each period promptly upon receiving medical substantiation of claimant's continuing disability, but his entitlement to compensation during the contested period was an issue upon which reasonable men could and did differ. A conclusion that claimant was disabled during that period would have to have been based on inference from (1) the fact that claimant apparently needed more treatment on January 11, 1971, and (2) the fact that on January 3, 1972 claimant had similar symptoms to those he had in July of 1970. While such an inference would have been reasonable, we cannot say that the employer's failure to draw that inference was unreasonable so as to subject him to penalties under ORS 656.262 (8).

■ As to the issue of the penalty for payment by means of sight drafts, the employer has not cross-appealed and the sole question is whether the amount of the penalty should be increased.

Claimant testified that he experienced difficulty in converting the sight drafts into cash. This was made known to the insurance carrier by claimant's attorneys and the insurance company attempted to arrange to expedite payments at a bank near claimant's home, but claimant testified that up to the date of the hearing the delay in cashing the drafts was averaging three days. When the problem was again brought to the attention of the insurance company, the company attempted to alleviate the inconvenience to claimant by issuing the drafts three or four days in advance of the expiration of the periods for which they are paid. We conclude

that the five percent penalty assessed by the circuit court is adequate to compensate claimant for any inconvenience which may have resulted from the carrier's use of sight drafts.

The order of the circuit court is affirmed in all respects.

Affirmed.