Submitted on record and briefs August 18, affirmed in part; reversed in part September 13, reconsideration denied September 29, petition for review denied October 19, 1976

REED, *Appellant—Cross-Respondent,*

*v.*

## DEL CHEMICAL CORPORATION,

*Respondent—Cross-Appellant.*

(No. 75-4145, CA 6095)

554 P2d 586

John M. Reed, Eugene, filed the brief pro se for appellant—cross-respondent.

Richard W. Butler, Thwing, Atherly & Butler, Eugene, filed the brief for respondent—cross-appellant.

Before Schwab, Chief Judge, and Fort and Tanzer, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

■ Claimant appeals from that portion of a circuit court order affirming an administrative determination that his aggravated back condition is medically stationary and that the extent of his unscheduled disability is equal to 160 degrees. Claimant contends that he is permanently and totally disabled.

The employer cross-appeals from the court's determination that claimant is entitled to a penalty assessed against the employer in a prior proceeding for unreasonable refusal to pay benefits. ORS 656.262(8).

### Claimant's Appeal

Claimant makes substantially the same arguments on appeal rejected by the Workmen's Compensation Board and circuit court. Both the Board and circuit court adopted the referee's findings of fact and conclusions of law. We agree that the referee's findings and conclusions are correct and set them forth in pertinent part:

"FINDINGS

"Claimant was employed as a sales representative by the employer, Del Chemical Corporation, in March, 1970. On or about March 10, 1970 he sustained an accidental injury to his back, which was subsequently held to be a compensable injury * * *.
"* * * * *

"On March 8, 1973 claimant's claim was first closed by a Determination Order wherein claimant was granted certain temporary disability benefits and an award of permanent partial disability of 15% of the maximum allowable by statute for unscheduled low back disability equal to 48 degrees * * *. Claimant's claim was thereafter reopened * * * and claimant was provided further medical treatment and temporary disability compensation * * *.

"On June 7, 1974 his claim was again closed by a Second Determination Order * * * awarding claimant compensation for temporary total disability inclusively

[ 735 ]

from July 10, 1973 through April 2, 1974, and an award of permanent partial disability equal to 32 degrees for 10% unscheduled disability resulting from the low back injury, in addition to the award of permanent disability granted by Board Determination Order dated March 8, 1973 * * *. Thus far claimant has received a total award of permanent partial disability of 25% equal to 80 degrees for unscheduled disability, of a maximum 320 degrees.

"* * * [C]laimant has seen two more orthopedic surgeons and again visited or been examined by a chiropractor with whom he had previously treated, Dr. M. P. Bryson. Dr. Rockey, an orthopedic surgeon in Eugene, * * * indicated that claimant does have persistent lumbar disc herniation symptoms and indicated that diagnostic testing by a lumbar myelogram should be pursued, with the option of surgical intervention being present if the myelogram were positive. Dr. Rockey indicated further that claimant had a fear of surgery which, if surgery were necessary, should be overcome by psychiatric procedure but, on the other hand, if the myelogram were negative, then claimant's claim should be closed * * *. Claimant then was examined by Dr. David Fitchett, an orthopedic surgeon in Albany * * * [who] indicated the existence of persistent low back symptoms with the possibility of surgery as an option for treatment and indicated that claimant was unwilling to accept the risk of such surgery; Dr. Fitchett also indicated that without surgery he would foresee continuing persistent problems in this area, but recommended only the further continuance of conservative treatments to relieve acute problems * * *. Dr. Bryson, the chiropractor, indicated that he would not recommend a myelogram but would leave any operating procedure election up to Mr. Reed reporting that claimant's condition was medically stationary * * *. [Claimant] had not undergone any diagnostic myelogram at the time of the hearing, nor any surgical procedure to explore or relieve his symptoms. [Claimant] testified at the hearing that he had not refused to undergo a myelogram or to have surgery but indicated that he was still considering that option. That testimony is inconsistent with the reported consideration of such treatment by claimant from the doctors he has seen since November 1973. The consensus from the medical reports is clear that claimant does have a severe

physical disability unless his symptoms are relieved by surgery.

"* * * * *

"Greg Harrison, a vocational counselor for the Oregon State Employment Division, called as a witness by claimant in his behalf, testified that claimant had been considered for placement and counseled by the Employment Division for an extended period of time. Mr. Harrison testified at length concerning claimant's background, age, training and experience in relation to claimant's future employment considering the effect which the residual problems of claimant's injury * * * would affect claimant's future employability. He indicated that, while he considered claimant would be severely handicapped in some areas from obtaining future employment if his physical condition were not stabilized or corrected, that he would not consider claimant unable to obtain further employment, although he might need specific retraining for specific skills. He further indicated that he was of the opinion that claimant's absorption with his workmen's compensation proceedings adversely affected claimant's intensity of exploring future employment possibilities.

"* * * * *

"Claimant had a prior back injury in 1965 which ultimately required a lumbar laminectomy in 1966. Claimant continued to have permanent residual disability from this injury although he indicated to medical practitioners that he had recovered well from this lumbar laminectomy by the time he was injured in 1970. This is contrary to the testimony of claimant's father who indicated that claimant still had residual disability when working as a laundry driver salesman before the 1970 injury.

"* * * * *

"OPINION

"* * * * *

"Claimant contends that the determination that he was medically stationary in April, 1974 on which the closure of his claim by the June 7, 1974 Determination Order was founded was incorrect as there was no medical evidence which would justify such a decision * * *.

"* * * * *

"* * * Claimant's claim was reopened for additional medical treatment and payment of additional temporary disability compensation * * *. During the time his claim was reopened claimant did not undergo further curative treatment; any treatment received was purely palliative and not curative. He did undergo some additional medical examination by qualified specialists who indicated that diagnostic treatment should be pursued with the possible necessity for surgery thereafter dependent upon the diagnosis rendered. In this regard the status of claimant's medical condition was unchanged from that which was presented in the earlier hearing before Referee Seifert as those same identical possibilities and probabilities existed between 1972 and 1973. During this additional one year period, or more, from 1973 until the hearing was held in 1974, claimant still had not elected to undergo any of the possible curative treatment being suggested, although it was clearly indicated by all medical practitioners consulted that the options were available and the decision was up to the claimant. His failure to act to undergo the suggested treatment procedures is directly contradictory * * * to his assertions at the hearing that he was still considering these medical options. His failure to make positive advancements toward undertaking these suggested procedures is, again in my opinion, complete confirmation of the indications in the medical reports that he was refusing to undergo such medical procedures. Claimant cannot continue to sit back and do nothing and yet keep presenting his contention that his condition is not medically stationary and that he is entitled to further medical treatment. * * * In addition, there is, contrary to claimant's argument, a specific medical opinion that claimant's condition was medically stationary contained in a report by the chiropractor, Dr. Bryson, whom claimant asserted was his treating physician during this period of time. * * *

"* * * [T]he determination that claimant's condition is medically stationary is an administrative determination based upon medical evidence available at that time. There was no curative treatment being recommended or rendered after April 2, 1974, except certain suggested diagnostic treatment and possible surgical procedure which claimant refused to undergo. In such circumstances, no further curative treatment was available. The

[ 738 ]

determination that claimant's condition was medically stationary on April 2, 1974 was correct. * * *
"* * * * *

"Before one can make a correct evaluation of the effect of claimant's residual disability from this injury on his potential future earning capacity, which is the standard by which permanent disability is evaluated in an unscheduled disability case, one must consider the impact of claimant's failure to undergo the suggested medical procedures for potential curative treatment. Claimant's fear of surgery and refusal to undergo the suggested diagnostic treatment or surgery procedures appears to be out of all proportion to the risk from such medical procedures described in the medical evidence. Although claimant had some residual disability from his prior injury, which might have been caused to some extent by the treatment rendered for that earlier injury, he indicated to several practitioners that he had recovered fairly well from that earlier injury and he did not indicate to them or testify that his prior surgery was so abhorrent that he was in fear of similar treatment. * * * [C]laimant's failure to undergo this surgery * * * [is] unwarranted and unreasonable. * * * Nowhere has it been indicated in the medical evidence that the prognosis for correction of the persistent symptoms would be poor; from the description of the symptoms contained in the medical evidence it would certainly be a reasonable inference that surgical intervention would at least partly relieve the symptoms which would provide some relief and diminish claimant's continuing physical impairment.
"* * * * *

"The principal thrust of claimant's contention is that he is entitled to compensation for permanent total disability on the basis of the now established odd-lot doctrine—that category of the work force which is defined in *Deaton v. SAIF,* 13 Or App 298, [509 P2d 1215 (1973),] and *Seaberry v. SAIF,* [19 Or App 676, 528 P2d 1103 (1974),] * * * [H]e contends that while he is not altogether incapacitated, he is nevertheless so handicapped that he is not able to obtain regular employment in any recognized branch of the labor market.

"The medical evidence alone is not sufficient to establish a *prima facie* case in claimant's favor. The

medical evidence alone does not establish that he is so handicapped; although it does indicate that he is severely disabled, such indication of severe disability appears to be predicated upon his continuing in a medical condition without improvement by the suggested medical procedures. Considering the medical evidence presented and other relevant factors of age, education, intellectual resources, work experience and vocational aptitude, * * * claimant is not within the odd-lot category. Despite the protestations that claimant has an additional handicap because he is over-educated, the record is clear that claimant has above average mental resources and is quite capable of developing additional skills. He is still a young man [age 42] and has much potential ahead of him. * * *
"* * * * *

"* * * [C]laimant's medical evidence does show the existence of substantial physical disability even if the corrective medical procedure were necessary and successful, over that disability he had prior to this injury. It is also a reasonable conclusion from the evidence presented that this does cause a serious handicap on his future employment from the residual consequences of this injury and that he will be required to learn new skills in order to become gainfully employed once more. * * *

"Considering the evidence of his physical disability presented and the vocational aptitudes, and handicaps, that claimant has * * * a fair award of permanent partial disability is equal to 50% loss of the workman for the impact of this injury, aggravating a preexisting condition, upon his potential future earning capacity. * * *"

## Employer's Cross-Appeal

The employer appeals from the circuit court's determination that claimant is entitled to a penalty assessed against the employer by a referee in a prior proceeding for unreasonable refusal to pay benefits pursuant to ORS 656.262(8).[1] The Board's reversal of that penalty

---

[1] "If the fund or direct responsibility employer or its insurer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the fund or direct responsibility employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382." ORS 656.262(8).

was subsequently affirmed by this court in *Reed v. Del Chem. Corp.,* 16 Or App 366, 518 P2d 679, Sup Ct *review denied* (1974). The circuit court held that the employer was nevertheless required to pay the penalty under ORS 656.313 which provides:

> "(1) Filing by an employer or the State Accident Insurance Fund of a request for review or court appeal *shall not stop payment of compensation* to a claimant.

> "(2) If the board or court subsequently orders that compensation to the claimant should not have been allowed or should have been awarded in a lesser amount than awarded, the claimant shall not be obligated to repay any such compensation which was paid pending the review or appeal." (Emphasis supplied.)

■ Employer contends that a penalty imposed under ORS 656.262(8) is not a "payment of compensation" within the meaning of the foregoing statute. We agree.

It is unlikely that the legislature considered whether a penalty imposed pursuant to ORS 656.262(8) is "compensation" a claimant is entitled to receive under ORS 656.313 pending review. The purpose of the latter statute is to ensure that an injured workman is not deprived of compensation benefits when they are most useful to him. *See Leech v. Georgia-Pacific Corp.,* 254 Or 351, 458 P2d 438, 460 P2d 359 (1969). This purpose is not served by requiring the immediate payment of a penalty assessed against an employer or its insurer for an unreasonable delay or refusal to pay benefits. Further, if a penalty were considered "compensation," the provisions of ORS 656.313(2) would relieve a claimant from repaying a penalty paid to him pending review even when the penalty is subsequently held improper. Hence, as a practical matter, such an interpretation would effectively deny an employer the opportunity of judicial review of the order prescribing a penalty. We do not believe the legislature, if it had considered the problem, would have chosen to preclude an employer from judicial review of a penalty in this manner.

Affirmed in part, reversed in part.