Argued and submitted May 5, affirmed October 14, 1998

In the Matter of the Compensation of
David F. Lemus, Claimant.

## GREENBRIAR AG MANAGEMENT
and Farmers Insurance Group,
*Petitioners,*

*v.*

David F. LEMUS,
*Respondent.*

(96-02392; CA A98383)

965 P2d 493

Vera Langer argued the cause for petitioner. With her on the briefs was Scheminske, Lyons & Bussman, LLP.

Richard F. McGinty argued the cause and filed the brief for respondent.

Before De Muniz, Presiding Judge, and Haselton and Linder, Judges.

HASELTON, J.

Linder, J., dissenting.

## HASELTON, J.

Insurer seeks review of an order of the Workers' Compensation Board setting aside insurer's revocation of acceptance and concomitant "back-up" denial of claimant's low back injury claim. ORS 656.262(6)(a). The Board determined that, although claimant had misrepresented his medical history, insurer failed to show that those misrepresentations could reasonably have affected its decision to accept the claim. The Board further rejected insurer's alternative and related argument that "later obtained evidence" concerning claimant's medical history justified the "back-up" denial. We conclude that the Board did not err in either regard and affirm.

The Board found the following material facts: On December 2, 1995, claimant sought treatment from Dr. Jack Buchanan in the Salem Hospital's emergency room, complaining of low back and left hip pain. Claimant told Buchanan that he had been injured on November 29, 1995, when he lifted a Christmas tree while working for employer. Claimant also told Buchanan that he had no history of back problems.

On December 4, 1995, claimant received treatment from Dr. Janet Neuburg, who diagnosed a back strain. Although claimant admitted that he had a prior workers' compensation claim from an auto accident, he told Neuburg that he did not have any prior back problems. On the same day, claimant completed a medical report form, answering "no" to the question, "Was the same body part injured before?"

Claimant's answers to Buchanan and Neuburg, as well as his response on the report form, were, in fact, misrepresentations. In particular, contrary to his statement that he had not previously injured his back, claimant had compensably injured his low back in a motor vehicle accident while working for a different employer on April 28, 1988. As a result of that injury, claimant had been temporarily disabled from April 1988 until mid-1989, with treatment for that injury continuing through at least October 1990, and had

received an award of 52 percent unscheduled permanent partial disability for that injury. In December 1989, claimant had filed an unsuccessful aggravation claim pertaining to the April 1988 injury. In December 1990, claimant had filed a claim for a low back, left leg, and right ankle injury allegedly incurred while working for a different employer. That claim was resolved through a disputed claim settlement.

On January 24, 1996, insurer's claims representative sent a letter to claimant's treating physician, Neuburg, requesting information concerning claimant's condition. That letter included the following question and information:

> "Were you aware Mr. Lemus had at least two prior claims in 1988 and 1990? Please note we are in the process of obtaining the records and will provide your office with a copy of the records. The first claim was in 1988 processed by SAIF. The injury was lumbo/sacral strain. He was treated by Don Poulson, M. D. The claim was denied. A second claim occurred in 1990. It also appears to be for overexertion resulting in multiple parts sprain/strain."

On February 13, 1996, before receiving the additional records referred to in the January 24 letter and, apparently, before receiving Neuburg's response to that letter, insurer accepted the claim for nondisabling lumbar strain. There is no evidence or explanation in the record as to why insurer accepted the claim at that time. The 90-day statutory period for accepting or denying claims, ORS 656.262(6)(a), did not expire until March 6, 1996.

After accepting the claim, insurer received the records concerning claimant's prior claims. On March 1, 1996, insurer revoked its prior acceptance and issued a "back-up" denial pursuant to ORS 656.262(6)(a). The notice of revocation and denial stated, in part, that, after having accepted the claim:

> "[W]e have received a significant volume of information which demonstrates that the history you provided to your examining and treating physicians misrepresented your true medical history regarding prior lower back disorders and symptoms. Having now received accurate information

regarding your health history, we have come to the conclusion that your alleged injury which allegedly occurred on or about November 27, 1995 is not compensable."

The Board set aside insurer's revocation of acceptance and "back-up" denial. In so holding, the Board rejected insurer's arguments that the revocation and denial were proper under ORS 656.262(6)(a) either because (a) claimant had materially misrepresented his medical history; or (b) the records and reports received after acceptance constituted "later obtained evidence" that the claim is not compensable.

With respect to misrepresentation, the Board found that claimant was, in fact, untruthful concerning his prior low back injuries and the related 1988 and 1990 claims and, thus, that he "misrepresented his medical history." Nevertheless, the Board determined those misrepresentations were not "material" because insurer had failed to show that the misrepresentations "could have reasonably affected" its decision to accept the claim. *See Ebbtide Enterprises v. Tucker*, 303 Or 459, 464, 738 P2d 194 (1987). The Board explained:

> "It is apparent from the record that, at the time of the January 24 letter to Dr. Neuburg, the insurer did not have every available document concerning claimant's prior medical history. The information also possibly is at least partly incorrect because there is no evidence that SAIF denied the 1988 claim. What the letter does show, however, is that the insurer knew that claimant had at least one previous injury to his low back and had received treatment for it. The letter also shows that claimant had been involved in claims in 1988 and 1990. Thus, the insurer knew *before* it issued its acceptance that claimant was not truthful when he told his treating physicians that he had not previously injured his low back and that he omitted to inform them of the 1990 claim. Because the insurer was aware of this misrepresentation and nevertheless issued its acceptance of a lumbar strain, we conclude that the insurer failed to show that claimant's misrepresentation 'could have affected' its decision to accept." (Emphasis in original; footnotes omitted.)

With respect to the "later obtained evidence" argument, the Board acknowledged that "the insurer did not have claimant's entire available medical record and obtained the

majority of such evidence after it issued its acceptance." Nevertheless:

> "The January 24, 1996 letter to Dr. Neuburg * * * shows that the insurer knew the basic facts of claimant's 1988 and 1990 claims and that claimant previously had been treated for a low back injury although [the insurer] did not realize the extent of the prior injuries. This information may have indicated that the claim was not compensable because claimant was untruthful concerning his prior medical history. Thus, because the insurer had evidence at the time of acceptance that the claim was not compensable, we also conclude that its revocation of acceptance and issuance of the denial were not proper."

On review, insurer reiterates its "misrepresentation" and "later obtained evidence" arguments. Those arguments are based on ORS 656.262(6)(a). The portion of the statute pertaining to misrepresentations provides, in part:

> "The insurer or self-insured employer may revoke acceptance and issue a denial at any time when the denial is for fraud, misrepresentation or other illegal activity by the worker. If the worker requests a hearing on any revocation of acceptance or denial alleging fraud, misrepresentation or other illegal activity, the insurer or self-insured employer has the burden of proving, by a preponderance of the evidence, such fraud, misrepresentation or other illegal activity * * *."

The portion of ORS 656.262(6)(a) pertaining to "later obtained evidence" provides, in part:

> "If the insurer or self-insured employer accepts a claim in good faith, in a case not involving fraud, misrepresentation or other illegal activity by the worker, and later obtains evidence that the claim is not compensable or evidence that the insurer or self-insured employer is not responsible for the claim, the insurer or self-insured employer may revoke the claim acceptance and issue a formal notice of claim denial, if such revocation of acceptance and denial is issued no later than two years after the date of the initial acceptance. * * *"

██ Although this statutory text does not refer to "materiality," only a material misrepresentation will support a "back-up" denial. *See Ebbtide Enterprises*, 303 Or at 464-65;

*SAIF v. Abbott,* 103 Or App 49, 52-53, 769 P2d 378 (1990); *Newport Elks Club v. Hays,* 92 Or App 604, 607, 759 P2d 327, *rev den* 307 Or 245 (1988). To demonstrate materiality, an insurer need not show that it would, in fact, have denied the claim but for the misrepresentation. *Ebbtide Enterprises,* 303 Or at 464; *Newport Elks Club,* 92 Or App at 607. Rather, the insurer must show that its decision to accept the claim "could reasonably have been affected" if the true facts had been disclosed. *Id.* Thus, the inquiry reduces to a factual determination: In the totality of the circumstances of *this* case, could *this* insurer's acceptance decision "reasonably have been affected" by the undisclosed information? If the Board's resolution of that factual issue is supported by substantial evidence in the record, we must affirm. ORS 183.482(8)(c). *See Ebbtide Enterprises,* 303 Or at 465 ("Because a proper standard for determining materiality was employed and because there is substantial evidence to support these findings, we will not disturb them on review.").

Insurer first contends that the Board employed an erroneous standard of materiality—*viz.* the "but for" standard expressly rejected in *Ebbtide Enterprises.* We disagree. The Board's opinion never employs "but for" language but, instead, twice explicity refers to the correct "could reasonably have been affected" standard.

■■ We further conclude that substantial evidence supports the Board's determination that insurer failed to prove that claimant's misrepresentation "could reasonably have affected" its decision to accept. The "could reasonably have affected" standard necessarily turns on the interplay among at least three considerations: (1) What information did the insurer have at the time of acceptance; (2) what information was concealed or misrepresented; and (3) on what basis did the insurer initially accept the claim. Without knowing why the insurer originally accepted the claim, it is difficult, if not impossible, to assess whether the concealed or misrepresented information could, or might reasonably, have affected that decision.

■ Here, the insurer, who bore the burden of proof, ORS 656.262(6)(a), offered no evidence or explanation as to why it accepted the claim even though: (a) It knew that claimant

had misrepresented his medical and claims history; (b) it had expressed those concerns to claimant's treating physician; (c) it had requested and was awaiting the records concerning claimant's prior claims, including a back claim; and (d) the statutory time limit for claims acceptance did not expire for another three weeks. Whatever the reasons for the insurer's decision to accept the claim, there is substantial, indeed uncontroverted, evidence that, as the Board found, "the insurer knew *before* it issued its acceptance that claimant was not truthful when he told his treating physicians that he had not previously injured his low back and that he omitted to inform them of the 1990 claim." (Emphasis in original.) Given the totality of the circumstances, the Board did not err in determining that insurer had not proved that claimant's misrepresentations "could reasonably have affected" its decision to accept the claim. *See, e.g., Ebbtide Enterprises*, 303 Or at 463-65 (substantial evidence supported the Board's determination that the claimant's failure to disclose 1977 low back injury was not material to the insurer's acceptance of July 1982 low back claim, where the claimant had disclosed a February 1982 low back injury and the insurer had failed to follow up *that* disclosure with additional investigation); *Abbott*, 103 Or App at 53 (claimant undercover detective's misrepresentations that his claims were mere "ruses" were not material where ostensible employer "knew what claimant's status at the mill was and that he had filed the claims" but "did not follow up on the claims or take any action to see that they were not sent to [the insurer]").[1]

■    We affirm the Board's rejection of insurer's "later obtained evidence" argument for similar reasons. As with misrepresentations, later obtained evidence can support a "back-up" denial only if that evidence is material—that is, only if that evidence could reasonably have affected the decision to accept the claim. Again, substantial evidence supports the Board's adverse determination on that issue. We note, moreover, that the alleged later obtained evidence here—

---

[1] The dissent, 156 Or App at 508, suggests that our holding permits unscrupulous claimants to sandbag unwary insurers. We disagree. All an insurer has to do to avoid such a result is to show why, given its reasons for accepting the claim, the concealed or misrepresented information could reasonably have affected that decision.

claimant's complete medical records—was evidence that insurer knew of and, in fact, had requested and was awaiting, when it accepted the claim well before the 90-day acceptance period had run. *See CNA Ins. Co. v. Magnuson*, 119 Or App 282, 286, 850 P2d 396 (1993) ("The legislature intended that evidence warranting a retroactive denial 'come about' after the insurer's original acceptance.").

Affirmed.

**LINDER, J.,** dissenting.

In my view, this is a very different case from *Ebbtide Enterprises v. Tucker*, 303 Or 459, 738 P2d 194 (1987), and the outcome should be different as well. In *Ebbtide,* the insurer accepted a claim knowing the relevant facts involving the claimant's prior injury to her back and knowing that claimant attributed most of her back problems to a prior 1982 injury. What the insurer did not know was that the claimant previously had injured her back not just in 1982, but also in 1977. The Workers' Compensation Board, in determining whether the insurer's decision "could reasonably have been affected" by knowledge of the prior injury, concluded that there was no reason to believe that the insurer would have investigated further based on the 1977 incident, when the 1982 injury to which most of the back problems were ascribed had not prompted any further inquiry on the insurer's part. *Id*. at 464. The Oregon Supreme Court agreed. *Id.*

Here, insurer was aware in a general way that claimant had made prior claims based on allegedly work-related injuries to his back. Insurer also believed that claimant may have misrepresented his medical history to the examining physician, and insurer therefore wrote the physician to determine if that was the case. At the time of acceptance, insurer was attempting to investigate the prior claims and the full scope of claimant's representations to the examining physician. That state of facts is in marked contrast to the facts in *Ebbtide*, where the insurer had the claimant's acknowledgment of a prior compensable injury to the same body part and undertook no investigation whatsoever on the basis of that prior injury. Insurer here did not have most, or even a significant, share of the essential information or documentation—indeed, it incorrectly thought one prior claim

had been denied, and it did not know the outcome of the other. That claimant's misrepresentation reasonably could bear on the employer's decision is evident, if not by common sense alone, then certainly by the fact that the employer was making reasonable efforts to obtain actual documentation of the prior claims and to confirm with the physician that in fact claimant had not given an accurate medical history.

The majority's real focus seems to be less on the materiality of the misrepresentation and more on the insurer's conduct in accepting the claim prematurely—that is, with three weeks remaining in which the insurer might have acquired the sought-after documentation and confirmation from the physician. The insurer's acceptance of the claim at that point may have been inadvertent, negligent, or simply cautious.[1] We do not know. The majority concludes that, without providing an explanation, the insurer could not carry its burden here. 156 Or App at 504-05. That approach turns the policy embodied in ORS 656.262(6)(a) on its head. The statute requires only that the insurer have accepted the claim in good faith. No one disputes that in this case, the insurer did so. Beyond that, the statutory policy places a premium on full and fair disclosure by a claimant. The net effect of the majority's holding in this case is that a claimant may flagrantly misrepresent his or her medical history without consequence if the insurer suspected or had sketchy but undocumented and incomplete information about the misrepresentation, was attempting to obtain more information, and in good faith accepted the claim before the insurer's investigative efforts bore fruit. The statute is seriously disserved by that result. I would reverse.[2]

Accordingly, I dissent.

---

[1] An insurer is subject to penalty for unreasonably delaying acceptance or denial of a claim. ORS 656.262(11).

[2] At a minimum, given the majority's determination that an insurer must demonstrate not only its good faith, but "on what basis" the insurer initially accepted the claim, I would remand this case to give the insurer the opportunity to make that demonstration.