Argued and submitted December 12, 2000, affirmed July 5, 2001

In the Matter of the Compensation of
Margaret A. Bengtson, Claimant.

CURRY EDUCATIONAL SERVICE DISTRICT,
*Petitioner,*

*v.*

MARGARET A. BENGTSON,
*Respondent.*

96-00487; A105309

27 P3d 526

George W. Goodman argued the cause and filed the brief for petitioner.

James C. Coffey argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Wollheim, Judge, and Ceniceros, Senior Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

In this workers' compensation case, employer seeks review of a Workers' Compensation Board (Board) order setting aside employer's revocation of acceptance and "back-up" denial of the compensability of claimant's previously accepted condition. ORS 656.262(6)(a).[1] The parties stipulated that the issue on appeal is whether the correction of a mistake in diagnosis can constitute "later obtained evidence" under ORS 656.262(6)(a). We review for errors of law, ORS 183.482(8)(a), and affirm.

The material facts, as found by the administrative law judge (ALJ) and adopted by the Board, are not in dispute. In January 1995, claimant injured her back when she slipped and fell at work. After claimant's injury, but before acceptance by employer, claimant had an x-ray and an MRI scan of her back. Drs. Neumann and Rich interpreted the x-ray and the MRI and diagnosed an "end-plate compression fracture on the L4 vertebra" and attributed the condition to the January 1995 incident. Employer then accepted a claim for a compression fracture at the L4 level.

■ After employer's acceptance of the claim, employer sent claimant to Dr. Dickerman for a compelled medical examination (CME).[2] As part of that CME, Dickerman reviewed claimant's previously taken spinal x-ray. Based on that review, Dickerman concluded that claimant had not suffered a compression fracture and that her current low back condition was not causally related to the January 1995 incident. Rather, Dickerman concluded that the MRI suggested

---

[1] ORS 656.262(6)(a) provides, in part:

"If the insurer or self-insured employer accepts a claim in good faith, in a case not involving fraud, misrepresentation or other illegal activity by the worker, and later obtains evidence that the claim is not compensable or evidence that the insurer or self-insured employer is not responsible for the claim, the insurer or self-insured employer may revoke the claim acceptance and issue a formal notice of claim denial, if such revocation of acceptance and denial is issued no later than two years after the date of the initial acceptance."

[2] In *Robinson v. Nabisco, Inc.*, 331 Or 178, 181, 11 P3d 1286 (2000), the Supreme Court referred to a medical examination such as this as a CME. In light of that decision, we will also refer to claimant's examination with Dickerman as a CME.

that claimant had a Schmorl's node,[3] a preexisting and degenerative condition. As a result, employer issued a current condition denial. Following that denial, employer had Drs. Thompson, Young and Warnock review claimant's x-ray and MRI. All three physicians agreed that claimant, in fact, had a Schmorl's node and not a compression fracture as originally diagnosed. Employer then issued the back-up denial, which is the subject of this appeal. That back-up denial stated:

> "[I]t appears that the diagnosis of the 'L4 compression fracture' was in error and that you have never experienced such condition, no less experienced one resulting from the alleged January 5, 1995 incident. Therefore, under ORS 656.262(6)(a), it is the employer's position that, based upon later obtained evidence, it is not responsible for an L4 compression fracture. The acceptance of that claim is, therefore, hereby revoked, and the L4 compression fracture is hereby denied."

Claimant requested a hearing, challenging employer's back-up denial. Employer argued that it was not until after it accepted the claim that it learned that an L4 compression fracture never existed. Thus, because the medical reports of Dickerman, Thompson, Young and Warnock were not available until after employer accepted the claim, those reports were later obtained evidence within the meaning of ORS 656.262(6)(a). The ALJ disagreed with employer and set aside the back-up denial. The Board affirmed, concluding that the back-up denial was procedurally invalid:

> "The requirement of 'later obtained evidence' in the statute refers to new material—that is, something other than the evidence that the carrier had at the time of the initial acceptance. *CNA Ins. Co. v. Magnuson*, 119 Or App 282, 286[, 850 P2d 396] (1993). A reevaluation of known evidence, for whatever reason, is not 'later obtained evidence' under ORS 656.262(6)(a). *Id.*

> "* * * * *

---

[3] A Schmorl's node is defined as the "prolapse of the nucleus pulposus through the vertebral body endplate into the spongiosa of the vertebra." *Stedman's Medical Dictionary*, 1215 (26th ed 1995).

"We agree that the medical opinions from these physicians were not rendered until after the acceptance and, thus, were not available to the employer at the time of acceptance. * * * [H]owever, the opinions from these physicians for the most part relied upon the same information available to the employer when it accepted the L4 compression fracture. *See Greenbriar Ag Management v. Lemus*, 156 O[r] App 499[, 965 P2d 493] (1998)[, *rev den* 328 Or 594 (1999)]. * * * Thus, we consider the medical opinion reports generated after the acceptance as constituting a re-evaluation of the existing evidence rather than 'later obtained evidence.' "

On judicial review, the narrow issue before us is whether the correction of a mistake in diagnosis, based on an x-ray and MRI that were available to employer *before* it initially accepted the claim, constitutes "later obtained evidence" within the meaning of ORS 656.262(6)(a). Employer continues to contend that the medical reports indicating a mistake in diagnosis that were received after acceptance of claimant's claim constitute later obtained evidence. Claimant, on the other hand, argues that later obtained evidence should not be construed to include a new analysis of the same information the insurer knew or should have known of at the time it accepted the claim. We agree with claimant.

■ In *Magnuson*, we interpreted the term "later obtained evidence" and held that,

"[t]he legislature intended that evidence warranting a retroactive denial 'come about' after the insurer's original acceptance. * * * [T]he statute requires new material, *i.e.*, something other than the evidence that the insurer had at the time of the initial acceptance. * * *

"* * * However, a reevaluation of known evidence, for whatever reason, is not 'later obtain[ed] evidence' under ORS 656.262(6)." 119 Or App at 286.

Here, the medical reports that employer argues constitute "later obtained evidence" are not based on any information not known to employer at the time it accepted the claim. Rather, those medical opinions simply re-evaluated the information in existence and known to employer at the time of claim acceptance—*i.e.*, the x-ray and the MRI scan. Medical opinions based on pre-acceptance tests are not later obtained

evidence under our holding in *Magnuson*. *See also Freightliner Corp. v. Christiensen*, 163 Or App 191, 195, 986 P2d 1263 (1999) ("In light of employer's acknowledgment that it was aware of the possibility that claimant had herniated discs at the time it issued its acceptance of the claim, there was no error on the part of the Board in rejecting employer's assertion that the claim could be denied on the basis of newly discovered evidence."); *Lemus*, 156 Or App at 506-07 (claimant's complete medical record of which employer was aware at the time of claim acceptance did not constitute later obtained evidence).

Employer argues that the meaning of the phrase "later obtained evidence" is clear and unambiguous. Specifically, employer argues that, under ORS 656.262(6)(a), "new evidence must show that the claim was not compensable at the time that the claim was accepted." Because the corrected mistake in diagnosis is evidence and it was obtained after employer accepted the claim, it is later obtained evidence under the plain meaning of the statute. Although employer's position is superficially plausible, it misses an essential point: The x-ray and MRI re-interpreted by Dickerman, Thompson, Young and Warnock after acceptance are the same x-ray and MRI mistakenly interpreted by Neumann and Rich before acceptance. Thus, the evidence that is the basis of the re-diagnosis antedated acceptance. The evidence is not "newly discovered," only the diagnosis is.

Therefore, we hold that the correction of a mistake in diagnosis under the facts of this case is not later obtained evidence because the correction came about after several physicians re-evaluated information already in existence at the time of acceptance.

Affirmed.