Argued and submitted August 2, affirmed November 14, 2001

In the Matter of the Compensation of
Steven P. Stewart, Claimant.

BARRETT BUSINESS SERVICES, INC.,
*Petitioner,*

*v.*

Steven P. STEWART
and Freightliner Corp.,
*Respondents.*

98-06193 and 98-03468; A111407

35 P3d 1055

Scott H. Terrall argued the cause and filed the briefs for petitioner.

Deborah L. Sather argued the cause for respondent Freightliner Corp. With her on the brief were Tracy J. White and Sather, Byerly & Holloway.

Michael A. Bliven waived appearance for respondent Steven P. Stewart.

Before Landau, Presiding Judge, and Brewer and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

■      This workers' compensation case requires us to determine whether Barrett Business Services, Inc. (Barrett), having accepted responsibility for claimant's compensable injury, was entitled subsequently to issue a "back-up" denial based on evidence obtained after claim acceptance, indicating that an earlier employer, Freightliner LLC (Freightliner), was responsible. The Workers' Compensation Board (Board) rejected Barrett's argument, concluding that the denial was not based on "later obtained evidence." We review the Board's understanding of what "later obtained evidence" means for errors of law, ORS 183.482(8)(a); *Curry Educational Service Dist. v. Bengtson*, 175 Or App 252, 27 P3d 526 (2001), and its factual findings for substantial evidence, ORS 183.482(8)(c); *Greenbriar Ag Management v. Lemus*, 156 Or App 499, 965 P2d 493 (1998), *rev den* 328 Or 594 (1999), and affirm.

In November 1994, claimant injured his right wrist while working for Freightliner. Freightliner accepted the condition as a disabling injury. On October 26, 1995, a determination order awarded periods of temporary partial and temporary total disability.

Thereafter, claimant left Freightliner and went to work for Barrett. In March 1997, while on the job at Barrett, he twisted his right wrist lifting a propane tank. He was examined in an emergency room for severe pain. While there, he mentioned that he had experienced wrist pain in the past. He was given a splint and medication.

Several days later, as a result of repeated bouts of discomfort in the wrist, claimant saw Dr. Yarusso. He told the doctor that he had originally injured the wrist while at Freightliner and had continued to wear a band for it. Yarusso diagnosed wrist tendinitis and noted that claimant's symptoms might stem from the injury on his old job. Claimant was referred to Dr. Van Allen, a surgeon. In May 1997, claimant consulted Van Allen and again recounted the history of his earlier wrist injury at Freightliner, reporting that he had experienced intermittent pain since its occurrence. Van Allen suggested surgery and advised Barrett's processing agent

that, in his opinion, claimant suffered from the acute injury he received in March 1997 at Barrett, rather than from an exacerbation of a preexisting condition, but that there was no way to confirm this opinion because medical records were not available for the earlier injury.

On July 14, 1997, Barrett's processing agent accepted a claim for complete scapholunate dissociation with static carpal instability and classified it as nondisabling. Subsequently, the claim was classified as disabling.

On July 30, 1997, Van Allen performed wrist surgery on claimant. His postoperative report indicated that he still believed that claimant's injury was caused by the 1997 incident that occurred while employed by Barrett. However, Dr. Gambee, an orthopedic surgeon, reviewed claimant's charts in February 1998 and concluded that claimant's condition was related to the earlier injury suffered on the job at Freightliner.

On July 27, 1998, claimant was seen by Gambee and Dr. Vessely. Gambee noted that he now had more information than when he made his chart review and acknowledged that he was changing his opinion as a result of this more complete examination: He now opined that claimant's condition was the result of the injury while at Barrett. The next day Freightliner denied responsibility for the claim.

Van Allen then reviewed the records that predated his involvement with the case and concluded that claimant had a preexisting injury, the symptoms of which were only exacerbated by the later Barrett injury—thus contradicting Gambee and putting responsibility back on Freightliner. He also noted that his "intraoperative findings with the mild degenerative changes would be consistent with a more remote injury." In a letter dated September 16, 1998, Barrett rescinded acceptance of the claim, issued the "back-up" denial and claimed that Freightliner bore the responsibility.

Claimant at this point had an injury that both employers agreed was compensable, but for which both denied responsibility. He sought review of both denials. An administrative law judge (ALJ) found that Barrett's back-up denial of the claim was not based on later obtained evidence,

set aside Barrett's back-up denial of responsibility, affirmed Freightliner's denial of responsibility, and assessed a penalty against Barrett. Barrett appealed to the Board, which reversed on the penalty assessment but affirmed the ALJ's conclusion that Barrett bore responsibility for claimant's injury. Barrett seeks judicial review.

The legislative assembly enacted the so-called "back-up" denial provision of ORS 656.262(6)(a) in order to address the problem of "nervous denials," that is, allegedly unwarranted denials issued by employers who feared that, once they had accepted a claim, they would be unable to revoke acceptance even if they later discovered evidence indicating that the claim was not compensable or that they were not responsible for it. *CNA Ins. Co. v. Magnuson*, 119 Or App 282, 285, 850 P2d 396 (1993).

ORS 656.262(6)(a) provides, in pertinent part:

"If the insurer or self-insured employer accepts a claim in good faith * * * and later obtains evidence that the claim is not compensable or evidence that the insurer or self-insured employer is not responsible for the claim, the insurer or self-insured employer may revoke the claim acceptance and issue a formal notice of claim denial[.]"

In order to review the Board's order, we must first determine what "later obtained evidence" is and then determine whether Barrett's denial relied on it. Evidence obtained after issuance of the denial is, of course, irrelevant; such evidence could not have affected the denial and is therefore immaterial.

We have examined the phrase "later obtained evidence" in several cases. In *CNA Ins. Co.,* an employer accepted a claim before ORS 656.262 was amended to permit back-up denials. After the amendment, the employer solicited and received a "new" letter from the claimant's physician confirming the physician's earlier theory that the claim was not compensable. *CNA Ins. Co.,* 119 Or App at 284. The Board held that the "new" letter was not "later obtained evidence." We agreed:

"The legislature intended that evidence warranting a retroactive denial 'come about' after the insurer's original

acceptance. We agree * * * that the statute requires new material, *i.e.*, something other than the evidence that the insurer had at the time of the initial acceptance. The letter that employer offers as new evidence merely repeats the doctor's earlier report[.]" *Id.* at 286.

In *Greenbriar Ag Management,* the employer accepted a worker's claim after the employer had requested the worker's file from a previous employer but before the file arrived. When it did arrive, it contained evidence indicating that the first employer, not the second, was responsible. We held that the material arriving after acceptance was not new to the second employer, despite the fact that employer did not have it until after acceptance, because it "was evidence that insurer *knew of* and, in fact, had requested and was awaiting." *Greenbriar Ag Management*, 156 Or App at 507 (emphasis added). Thus, the term "later obtained evidence" excludes not only information that an employer actually has at the time of acceptance, but also information that the employer knows about but does not yet possess in concrete form.

In *Freightliner Corp. v. Christensen*, 163 Or App 191, 986 P2d 1263 (1999), the employer accepted a worker's claim stemming from a back injury but subsequently issued a denial based on "new" information indicating that the condition resulted primarily from degenerative disc and joint disease and not from any particular on-the-job trauma. We held that the evidence confirming the non-work-related cause was not "later obtained":

> "In light of employer's acknowledgment that it was aware of the *possibility* that claimant had herniated discs at the time it issued its acceptance of the claim, there was no error on the part of the Board in rejecting employer's assertion that the claim could be denied on the basis of newly discovered evidence." *Id.* at 195 (emphasis added).

That case, then, further limits what might be considered "later obtained evidence" so as to exclude information confirming facts that the employer had reason to suspect at the time of acceptance.

Most recently, in *Curry Educational Service Dist.,* the employer accepted a claim for a back injury based on two doctors' diagnoses. After acceptance, three more physicians

examined the worker, and all concluded that the first diagnosis was wrong: The employer was not responsible because the worker's injury was caused by a preexisting condition. The employer then issued a "back-up" denial. In concluding that the denial was not authorized by ORS 656.262(6)(a), we held that the "corrected" diagnosis was not "later obtained evidence" under that statute; "[t]he evidence is not 'newly discovered,' only the diagnosis is." 175 Or App at 257. We agreed with the claimant, who argued that the phrase " 'later obtained evidence' should not be construed to include a new analysis of the same information the insurer knew or should have known of at the time it accepted the claim." *Id.* at 256. Thus, "later obtained evidence" does not include new comments on or analyses of preexisting factual data; it includes only new facts in the narrowest sense.

■     From those cases, we extrapolate the following principle for application here: "Later obtained evidence" does not include evidence that the employer either had, or in the exercise of reasonable diligence should have had, at the time of acceptance, nor does it include the restatement, reevaluation, analysis, or confirmation of such evidence.

■     The Board found, and substantial evidence supports its findings, that, at the time Barrett accepted claimant's wrist injury,

"considerable evidence existed to indicate that the condition preceded claimant's injury on the job with Barrett. Claimant had a prior right-wrist injury with Freightliner. Barrett was aware of that. * * * There is no indication, however, that prior to acceptance, the former processing agent for Barrett made an effort to obtain the medical records associated with claimant's Freightliner injury. (Claimant had specifically identified for Barrett's agent the date of the Freightliner injury.)

"The very first day claimant was treated for the Barrett injury, he told the emergency room physician that he had experienced pain in the same area in the past. When claimant saw Dr. Yarusso only a few days later, claimant identified a Freightliner injury of several years earlier and indicated he continued to wear a band on his right wrist and had continued to have bouts of discomfort in the wrist.

"Most significantly, Dr. Nolan looked at the arthrogram done in May 1997 and interpreted it as showing a chronic, old scapholunate dissociation. It would be difficult to imagine a clearer signal to Barrett's then agent that claimant's problem preexisted his employment with Barrett. Barrett certainly knew of Dr. Nolan's existence, as the processing agent communicated with him in May 1997. The agent had one chart note, but it does not appear that the agent ever asked for the doctor's other notes.

"Dr. Van Allen initially told the Barrett agent that he could not define a specific diagnosis preexisting the Barrett injury. He indicated it was more likely that claimant sustained an acute injury in 1997 rather than a worsening of a preexisting condition, but he warned that there was no way of 'proving' that, as 'medical records were not available following that previous injury.' There is no indication that Dr. Van Allen sought those records. It appears that the agent for Barrett did seek them, and that they were provided, but not until after Barrett had already accepted the claim. There appears to be no reason why the agent for Barrett could not have obtained the records prior to its acceptance of the claim." (Citations to the record omitted.)

After accepting the claim and before issuing the denial, Barrett acquired the following new evidence: It received Van Allen's post-operative report indicating that he still believed claimant's condition resulted from the injury on the job at Barrett and a subsequent report indicating that the condition resulted not from the Barrett injury but from a preexisting condition. It also received Gambee's first review, which indicated that claimant's condition resulted from work at Freightliner, and a second review by Gambee indicating that the condition resulted from his injury at Barrett. It further received the contents of claimant's file from Freightliner, which contained information related to his earlier claim based on work there.

Based on that record, we conclude, as did the Board, that Barrett's denial was not based on later obtained evidence. The new evidence from Gambee ultimately supported Freightliner's position, not Barrett's. The new evidence from the Freightliner file cannot be considered "later obtained" because Barrett knew of its existence and importance at the time it issued the acceptance. *Greenbriar Ag Management,*

156 Or App at 506-07. Further, that evidence merely confirmed the existence of a preexisting injury, the possibility of which Barrett was aware at the time it accepted the claim, and therefore is not later obtained evidence. *Freightliner Corp.*, 163 Or App at 195.

As to Barrett's contention that new post-operative information from Van Allen played a large part in the "back-up" denial, the Board found otherwise, and substantial evidence supports that finding. Van Allen's only mention of the intraoperative findings is to conclude that they "would be consistent" with his position that the preexisting injury was what necessitated the surgery. He reached the same conclusion based on 1995 x-rays; the Board did not find that to be "reliance" on the intraoperative findings, and, again, substantial evidence supports that finding. And, even if those findings played a small part in the "back-up" denial, that would not be sufficient to justify it. In *Curry Educational Service Dist.*, we affirmed the Board in a finding that a "back-up" denial was procedurally invalid because the physicians' opinions "for the most part relied upon the same information available to employer when it accepted" the claim. 175 Or App at 256.

Barrett, then, issued the back-up denial based on information that was not "later obtained evidence." The denial was therefore invalid.

Affirmed.