Argued and submitted November 21, 1980, resubmitted
in banc May 6, affirmed as modified and remanded
for further proceedings May 11, 1981

## In the Matter of the Compensation of Juan (Ivan) Anfilofieff, Claimant.

### ANFILOFIEFF,
*Respondent - Cross-Petitioner,*

*v.*

## STATE ACCIDENT INSURANCE FUND CORPORATION,
*Petitioner.*

### (No. 78-4612, CA 17980)

627 P2d 1274

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for

petitioner. With him on the brief were K. R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund Corporation, Salem.

Paul J. Lipscomb, Salem, argued the cause for respondent - cross-petitioner. With him on the brief was Blair, MacDonald, Jensen & Lipscomb, Salem.

RICHARDSON, J.

GILLETTE, J., dissenting opinion.

**RICHARDSON, J.**

In this workers' compensation case, the State Accident Insurance Fund (SAIF) seeks review of an order of the Workers' Compensation Board (Board) finding claimant suffered a compensable injury. SAIF contends that claimant was not a subject worker as defined in ORS 656.027(2) and, therefore, not entitled to compensation. Claimant cross-petitions, claiming the Board erred in failing to award, or even address the issue of, statutory penalties for employer's alleged unreasonable resistance and delay in providing compensation. We review de novo, ORS 656.298(6); *Coday v. Willamette Tug & Barge,* 250 Or 39, 440 P2d 224 (1968); *Brenner v. Industrial Indemnity Co.,* 30 Or App 69, 566 P2d 530 (1977), and affirm as modified.

Claimant suffered a severe laceration to his left hand while at employer's residence on January 10, 1978. On March 20, 1978, he submitted a claim for benefits on a standard claim form. The form provided space for both claimant and employer to describe how the injury occurred. Claimant answered that he was standing on a ladder nailing corrogated metal siding to the side of a bath house at employer's home when the ladder slipped, causing him to fall. He stated that his hand was lacerated on a piece of the siding. Employer answered that claimant had stopped to visit him at his residence and cut his hand while helping employer carry a fence gate. On June 2, 1978, SAIF denied claimant's claim for the stated reason that claimant was not an employee of employer at the time of his injury and, therefore, not a "subject worker" entitled to compensation under the Workers' Compensation Law. Claimant requested a hearing on June 16, 1978.

As stated in the referee's opinion and order, the issue for determination was whether claimant sustained an injury arising out of and in the course of his employment for employer, on January 10, 1978. There was no dispute that claimant suffered an injury on that date while on employer's premises. The questions in dispute were (1) whether claimant was an employee and (2) how the injury occurred.

There was a substantial conflict in the evidence presented by the parties. Claimant did not speak English

and testified through an interpreter. He testified that he began work for employer, who was a home builder, in December, 1977, as a carpenter. He stated that his salary was $5 per hour and that he earned approximately $215 prior to his injury, of which $175 was paid in the form of a cow. All payments, other than the cow, were in cash and employer neither withheld taxes nor social security.

Claimant stated that on the morning of January 10, 1978, he and his son appeared at employer's residence to be transported to a housing project on which claimant was working for employer. Upon his arrival, employer told claimant that he was to work on a bath house located on employer's property, while employer ran some errands. Claimant testified that he was told that when employer returned, they would go to the housing project. Claimant worked six and a half hours, first covering the bath house floor and, later, nailing up corrogated metal siding. He testified that he lacerated his hand on the siding trying to catch himself after the ladder on which he was standing slipped.

Employer testified that he never had employed claimant. He further stated that on January 10, 1978, claimant had come to his premises to visit, that he had asked claimant to assist him in moving a fence gate and that while handling the gate, claimant cut his hand. He denied claimant was either on a ladder or working on the bath house. He stated that the bath house had no corrogated metal siding and that, in fact, the exterior of the structure was covered with plywood. He also offered the testimony of a representative of the Workers' Compensation Department, who stated that he had visited the premises four months after the injury and that, at that time, the bath house was covered with plywood siding.

Claimant's testimony was corroborated by his son. Claimant also offered testimony of an investigator for employer's personal liability carrier, who had visited the premises and taken photographs of the area within a few days after claimant's injury. The investigator stated that at the time of his visit, the bath house was partially covered with corrogated metal siding laid over the plywood siding and that he observed a piece of the metal siding on the ground adjacent to a ladder lying on the ground.

Following the injury, employer took claimant to a doctor and then to a hospital. Employer, who spoke claimant's native language, acted as an interpreter. Both claimant and his son testified that employer told claimant to tell the doctors that he cut his hand on a gate, or on some glass or on a shovel while digging in the yard. Employer told the treating physician that claimant had cut his hand on some glass. Later, when claimant was taken to a hospital for further treatment, employer stated, according to the hospital record, that the injury occurred while claimant was repairing a gate on employer's farm. Claimant testified that employer told him on one other occasion to tell even a different version of how the injury occurred.

■       The referee, who had the chance to observe the witnesses, found that the testimony of the employer was "not credible, and, in fact, that his version of these events is a deliberate falsification to avoid his responsibility as an employer." Because we have only the record to review, we give great weight to such findings, especially in a case such as this, where credibility is an important issue. *Miller v. Granite Construction Co.,* 28 Or App 473, 477, 559 P2d 944 (1977); *Fredrickson v. Grandma Cookie Co.,* 13 Or App 334, 337-38, 509 P2d 1213 (1973).

■■       We agree that employer's entire story is suspect. The credible testimony, supported by the medical evidence, leads to the conclusion that claimant's injury occurred as he described. We also agree with the Board's determination that claimant was employed by employer at the time he was injured. We turn then to the Board's determination that claimant was a "subject worker" at the time of his injury and entitled to compensation under the Workers' Compensation Law.

■       SAIF argues that even assuming claimant was employed by employer at the time of his injury, he is not entitled to compensation because he was a "nonsubject worker" as defined in ORS 656.027(2):

"All workers are subject to ORS 656.001 to 656.794 except those nonsubject workers described in the following subsections:

"(2) A worker employed to do gardening, maintenance, repair, remodeling or similar work in or about the private home of the person employing him."

SAIF contends that ORS 656.027(2) describes the only conceivable employment relationship between the parties and, therefore, controls the disposition of claimant's claim. We disagree. Though a wide variety of employment activities may fall within this "householders exemption," *see* 1C Larson, Workmen's Compensation Law, § 50.21 at 9-70 - 9-73 (1980), claimant was not *employed* to repair or remodel the bath house. The evidence shows that the parties employment relationship arose weeks earlier when claimant was hired by employer as a carpenter for the housing project. On the day claimant was injured, his employment status remained as a carpenter for employer. His work at employer's residence was incidental to his general employment and rendered for the personal benefit of employer. ORS 656.027(2) is inapplicable.

Although the precise question presented in this case has not been addressed in previous appellate opinions, *Bos v. Ind. Acc. Com.,* 211 Or 138, 315 P2d 172 (1957), presents a useful analysis. In *Bos,* employer was engaged in two separate occupations, one for which coverage was required by the compensation statutes and one which was exempt from coverage. Ninty-five percent of claimant's time was spent in the covered occupation. At the time of his injury, however, claimant was being transported after performing labor in employer's exempt business. Claimant appealed a determination that his injury was not compensable. The court concluded that claimant was entitled to compensation and reversed. The court noted:

"Under the findings of fact in this particular case, and in view of the oft repeated rule requiring that the Workmen's Compensation Act be given a liberal construction in favor of the workman, and particularly in borderline cases, we are constrained to hold that plaintiff was employed in a hazardous occupation, and that the small portion of his time spent in farming work was merely incidental thereto. ORS 656.022(4); *Livingston v. State Industrial Accident Commission,* 200 Or 468, 266 P2d 684. Such a liberal construction of our statutes in the case at bar will accomplish a result which will be in harmony with the rule generally applied in other states.

" 'The second category of troublesome cases is that which involves employees who go from one class of work to another. Here, as in the other specific exemptions, it is

impractical to construe the act in such a way that employees and employers dart in and out of coverage with every momentary change in activity. The great majority of decisions, therefore, attempt to classify the overall nature of the claimant's duties, disregarding temporary departures from that class of duties even if the injury occurs during one of the departures. * * *' 1 Larson, Workmen's Compensation Law, § 53.40, page 782." 211 Or at 146-47.

The issue in the present case is similar to that considered in *Bos.* The only difference is that in the case before us claimant's work was incidental to his normal employment and for employer's private benefit, rather than for employer's exempt occupation as in *Bos.* The principle stated in *Bos,* however, is applicable to the present situation as well.

"When any person in authority directs an employee to run some private errand or do some work outside his normal duties for the private benefit of the employer or superior, an injury in the course of that work is compensable." 1A Larson, Workmen's Compensation Law, § 27.40 at 5-310 (1979).

The rationale underlying this rule is that employer has the power to enlarge the scope of an employee's employment by assigning specific tasks. Once that authority is exercised, the employee has no practical choice but to perform as requested. The employee must either comply or face dismissal. To require the employee to decide whether to comply, but forfeit compensation, or refuse, and face dismissal, is impractical and unfair. The majority of courts that have decided this issue have reached the conclusion we now adopt that an injury suffered by an otherwise subject worker under such circumstances, is compensable. *See Keene v. Insley,* 26 Md App 1, 337 A2d 168 (1975); *Vicknair v. Southern Farm Bureau Casualty Ins. C.,* 292 So 2d 747 (La App 1974); *Jackson v. Lawler,* 273 So 2d 856 (La App 1973); *San Antonio v. Al Izzi's Motor Sales,* 110 RI 54, 290 A2d 59 (1972); *Friend v. Industrial Com.,* 40 Ill 2d 79, 237 NE 2d 491 (1968); *Carroll v. Trans-Dyne Corporation,* 22 AD 2d 739, 253 NYS 2d 449 (1964); Annot., 172 ALR 378 (1948). Claimant suffered a compensable injury, and the Board did not err in finding accordingly.

The remaining issue involves claimant's cross-petition. Claimant requested, before the referee and the

Board, that he be given penalties for what he described as employer's lies and active efforts to conceal the evidence. But for employer's actions, claimant suggests, SAIF would have accepted the claim and the financial hardship which he suffered as a result of the denial would have been avoided. Neither the referee nor the Board addressed the issue of penalties. Claimant contends the Board erred in this regard and urges this court to impose a "25% penalty on all compensation ultimately found due."

The issue of statutory penalties is covered in ORS 656.262(8). The subsection provides:

> "If the *corporation* or direct responsibility employer or its insurer *unreasonably delays or unreasonably refuses to pay compensation,* or unreasonably delays acceptance or denial of a claim, *the corporation* or direct responsibility employer *shall be liable* for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382." (Emphasis added.)

■ Read literally, the statute does not address penalties against SAIF for the conduct of contributing employers or noncomplying employers. The wording of the statute appears to authorize penalties only against a direct responsibility employer or against SAIF if either SAIF itself, a direct responsibility employer or its insurer unreasonably refuses or delays payment of compensation. However, the statute, read in the context of SAIF's function as an automatic insurer of noncomplying employers, indicates a legislative design to authorize penalties for unreasonable delay or refusal by the conduct of employers insured by SAIF. SAIF has the responsibility, when a claim is made against a noncomplying employer, to process the claim and make an independent determination whether the claim should be accepted or denied. In that respect, SAIF stands in the shoes of the noncomplying employer for the purposes of accepting or denying the claim. If a direct responsibility employer or its insurer is guilty of unreasonable conduct, the employer is liable for penalties. We do not believe the legislature intended to treat noncomplying employers or other employers insured by SAIF differently or to insulate their unreasonable conduct from penalties. One purpose of the penalty provision is to induce prompt and reasonable

payment of compensation so the injured worker will not be subjected to protracted periods of economic hardship.

■ Construing ORS 656.262(8) literally not to authorize penalties for unreasonable conduct of employers insured by SAIF would substantially detract from that purpose. Pursuant to the statute, SAIF is specifically liable for penalties for its own conduct determined to be unreasonable. We interpret the statute to authorize penalties to be paid by SAIF to the extent unreasonable conduct of a contributing or noncomplying employer causes or contributes to the delay or refusal of compensation.

■ SAIF denied the claim in this case, based on the reports from employer and its own investigation. Employer did not truthfully describe the cause of the injury or his relationship with claimant in the report to SAIF. By the time the investigator for SAIF reviewed the scene of the injury, employer had apparently altered the scene in order to cover up the true facts. In addition, employer gave false information to the doctor as to how the injury occurred. The conduct of employer was clearly unreasonable and was designed to avoid responsibility for the injury. Employer's conduct was a contributing cause of the denial of compensation and the consequent delay. Claimant is entitled to penalties for unreasonable denial of his claim.

The order of the Board is affirmed with the exception of the tacit denial of penalties. We remand to the Board for determination of appropriate penalties to be paid by SAIF for unreasonable denial of the claim.

Affirmed as modified and remanded for further proceedings.

GILLETTE, J., dissenting in part.

My sole concern with this case is the way it deals with the issue of penalties to be imposed against SAIF. The opinion holds that SAIF is liable for penalties in this case of a non-complying employer whose lies kept SAIF from timely accepting claimant's claim. With respect, I disagree.

The statutory penalty section at issue here is ORS 656.262(8), which provides,

"If the corporation or direct responsibility employer or its insurer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, *the corporation or direct responsibility employer* shall be liable for [a penalty]. * * *" (Emphasis supplied.)

The "corporation" is, of course, SAIF. As the opinion acknowledges, "Read literally, the statute does not address penalties for contributing employers or non-complying employers." That should settle it. ORS 174.010 tells us:

"In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all."

Unfortunately, that does not settle it. In spite of the statutory admonition, the majority goes ahead and "insert[s] what has been omitted," anyway. It does so by explaining that, since the statute makes direct responsibility *employers* responsible for penalties, it must have been intended by the legislature that SAIF, which stands in the shoes of the non-complying employer, be liable as well.

It should have been enough to say that if the legislature has meant that it had only to say so. Since this obviously is not enough, I suggest that we look for a *reason* for the distinction.

There is one. SAIF's responsibility for non-complying employers includes every fly-by-night operation in the state. SAIF may not even be able to *find* the employer. Certainly, it has no control over him. One can readily contrast this situation with that of the direct responsibility employer and/or its insurer—they are a responsible, known quantity. The exigencies of financial responsibility are such that such an employer may fairly be charged with his *own* recalcitrance (after all, he knows about it and only he has to pay for it) or even with that of his insurer (which has contractual responsibilities to him).

This contrast in reliability, accountability and even discoverability could, it seems to me, lead a rational legislature to conclude that it was putting enough pressure

on SAIF by making SAIF responsible for its *own* unreasonable actions, without making SAIF responsible for paying penalties for acts over which it—uniquely, in this system— had no control.

I respectfully dissent.

Roberts, Warren and Young, JJ., join in this dissent.