Argued and submitted November 22, 1989, reversed with respect to basis for temporary total disability benefits and remanded with instructions; otherwise affirmed August 8, 1990

In the Matter of the Compensation of
David R. Abbott, Claimant.
SAIF CORPORATION
and Olympic Forest Products,
*Petitioners,*

*v.*

David R. ABBOTT,
Liberty Northwest Ins. and Pinkertons, Inc.,
. *Respondents.*

(WCB 87-13095, 87-13096, 87-13097; CA A50887)

796 P2d 378

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for petitioners. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, Salem, and Scott P. Monfils and Jeffrey Stewart Love, Portland.

Craig A. Staples, Portland, argued the cause for respondents Liberty Northwest Ins. and Pinkertons, Inc. With him on the brief was Roberts, Reinisch & Klor, P.C., Portland.

No appearance for respondent David R. Abbott.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Petitioners seek review of an order of the Workers' Compensation Board that set aside SAIF's backup denials of responsibility for claimant's back injury and carpal tunnel syndrome.

Claimant was an employee of Pinkertons Detective Agency, which was hired by Olympic Forest Products to investigate the unusual number of worker's compensation claims that were being filed at one of its sawmills, as well as suspected drug use by employees at that mill. Pinkertons placed an undercover detective, claimant, in the mill to do the investigation. He worked as an entry level mill worker and received a paycheck from Olympic. Olympic paid him its usual hourly rate, and Pinkertons supplemented that to make up his Pinkertons' salary. Olympic made its usual payroll deductions from claimant's checks and paid premiums to SAIF for him. Pinkertons directed his investigative activities. Only the owner and the plant superintendent, Meek, knew of claimant's identity. Meek believed that claimant was using an assumed name for the investigation.

On November 7, 1986, a week after he began work at the mill, claimant was hit in the chest by a log. He filed an injury claim on November 18, claiming right wrist and right shoulder strain. A plant manager verified the injury and signed the claim. Claimant listed Olympic as his employer on the form and showed his wages as the amount that he was being paid by Olympic. As part of the claim filing process, claimant was required to talk with Meek, whose job it was to investigate compensation claims. Claimant told Meek not to worry about the claim, because it was just a ruse to allow him to talk to Meek about the investigation. Meek knew that the claim had been filed, but took no further action to delay or prevent it from going to SAIF and being approved. On December 15, 1986, SAIF accepted the claim as a non-disabling injury.

On January 6, 1987, claimant was injured again when another employee at the mill threw a 2 × 4 at him. He experienced back pain and numbness on his right side and filed a second injury claim, listing only back pain. He met with Meek concerning the claim. Meek assumed that it was not a real claim, but that claimant was again using it as an excuse to talk

with him about the investigation. Again, he knew that the claim had been filed, but did not investigate or take action to delay it from going to SAIF, because he did not think that claimant was really hurt. SAIF accepted the claim on February 5, 1987, as a back strain. Claimant left Olympic in January, 1987. In February, his neurosurgeon informed SAIF that he had a carpal tunnel syndrome and that he might need to have surgery, which he underwent on May 22, 1987. SAIF paid claimant compensation for the time he lost due to the surgery. Claimant filed a claim against Pinkertons on May 29, 1987, for the carpal tunnel damage resulting from the November 7, 1986, injury.

In early 1987, shortly after claimant left the mill, Meek discovered that claimant was receiving compensation for the two injuries. On June 22, 1987, SAIF denied responsibility for both previously accepted claims on the ground that claimant was not Olympic's employee. Liberty Northwest, Pinkertons' insurer, denied compensability on June 25 on the ground the injury did not result from claimant's employment at Pinkertons.

A hearing was held on SAIF's and Liberty's denials on December 22, 1987. The hearings officer approved Liberty's denial and disapproved SAIF's denials under *Bauman v. SAIF,* 295 Or 788, 670 P2d 1027 (1983). The hearings officer held that any misrepresentations that claimant had made were not sufficient to allow SAIF's backup denials, because Meek knew that claimant had filed claims and should have followed up on them, even if he had misunderstood why they were filed. The hearings officer also awarded increased time loss payments, based on claimant's entire wages, including the amount paid by Pinkertons, rather than just on the wages from Olympic. The Board affirmed.

 Petitioners argue that the Board erred in setting aside SAIF's denial. An insurer may not deny a previously accepted claim more than 60 days after receiving notice of the claim, without a showing of fraud, misrepresentation or other illegal activity. *Ebbtide Enterprises v. Tucker,* 303 Or 459, 738 P2d 194 (1987). In order to justify a backup denial, a misrepresentation must have been sufficiently material that the insurer's

decision "could reasonably have been affected." *Ebbtide Enterprises v. Tucker, supra,* 303 Or at 464.[1]

■ Petitioners contend that claimant misrepresented his employment status when he listed Olympic as his employer on the claim form and that his statement to Meek that the claims were not real was a misrepresentation. Although claimant's statement to Meek that the claims were ruses were misrepresentations, they were not sufficiently material to justify SAIF"s backup denial. Meek knew what claimant's status at the mill was and that he had filed the claims. That knowledge was attributable to Olympic as well as to its insurer, SAIF. *Colvin v. Industrial Indemnity,* 301 Or 743, 725 P2d 356 (1986); *Nix v. SAIF,* 80 Or App 656, 660, 723 P2d 366, *rev den* 302 Or 158 (1986). Meek did not follow up on the claims or take any action to see that they were not sent to SAIF. In view of Olympic's knowledge and its inaction, we conclude that claimant's misrepresentations were not sufficiently material to affect SAIF"s decision on the claim.

■ Petitioners argue that, even if SAIF is not entitled to deny the claims, the Board should have held that employer is not responsible for the carpal tunnel syndrome. Claimant's condition was diagnosed at the time of injury as wrist sprain and arm strain. It was described on the claim form as involving swelling, aching and hand numbness. It was not diagnosed as carpal tunnel syndrome until after the November injury was accepted. Petitioners argue, relying on *Johnson v. Spectra Physics,* 303 Or 49, 733 P2d 1367 (1987), that SAIF accepted the November 7 injury as "right wrist strain and right shoulder strain" and that that was not an acceptance of the carpal tunnel syndrome. *Johnson* held that, when a single claim encompasses two separate conditions, acceptance of one of the conditions does not constitute acceptance of the other. Here, however, the claim did not involve two conditions, but rather involved the question of whether acceptance of the compensability of specific symptoms included acceptance of the disease that was later found to cause the symptoms. In *Georgia-Pacific v. Piwowar,* 305 Or 494, 753 P2d 948 (1988), the court held that an acceptance of the compensability of specific symptoms includes acceptance of the compensability of the disease causing those symptoms. As the court stated:

"Allowing an insurer to deny compensation for a previously-accepted condition on_ _ _t learns that the condition is

[1] The so called "*Bauman* rule" on retroactive denials was repealed effective July 1, 1990, by Or Laws 1990 (Special Session), ch 2, § 15. The change does not affect this case.

attributable to a specific noncompensable disease opens the door to instability, uncertainty and delay. This is precisely the kind of vacillation which this court found unacceptable in *Bauman,* 295 Or at 793-794." 305 Or at 501.

SAIF accepted claimant's condition involving upper extremity swelling, aching and hand numbness. That acceptance encompassed the disease causing those symptoms, which turned out to be a carpal tunnel syndrome. SAIF may not avoid responsibility for that condition.

■■ Petitioners also assert that the Board erred in affirming the increase of the time loss benefits by including the wages paid by Pinkertons. We agree. Generally, when a claimant who is working for two employers is injured, benefits are measured by the wages from both jobs, but each employer bears its proportionate share of the burden of paying benefits. *Bolton v. Oregonian Publishing Co.,* 93 Or App 289, 761 P2d 135 (1988). Whether or not this is a case of dual employment, because claimant's work activities were all part of the performance of one job, only Olympic's liability is involved in this review. We conclude that Olympic is only responsible for benefits based on the wages that it paid to claimant.

Reversed with respect to the basis for temporary total disability benefits and remanded with instructions to modify order in accordance with this opinion; otherwise affirmed.