Argued and submitted July 21, reversed and remanded November 10, 2004

Roger BENSON,
*Respondent,*

*v.*

STATE OF OREGON,
*Appellant,*
*and*

COUNTY OF LANE,
*Defendant.*

0108-07955; A119452

100 P3d 1077

Judy Lucas, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Charles Carreon argued the cause and filed the brief for respondent. With him on the brief was Online Media Law, PLLC.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

Oregon officials provided California officials with a criminal history report erroneously indicating that plaintiff was a thrice-convicted felon. That error caused California officials wrongly to incarcerate plaintiff for 43 days, leading to this negligence action. At trial, both plaintiff and the state moved for a directed verdict on the issue of whether plaintiff had given the state timely notice of his impending tort claim. The trial court denied the state's motion, granted plaintiff's, and subsequently entered judgment in favor of plaintiff for $106,500.00. The state appeals. We conclude that an issue of material fact remains unresolved. We therefore reverse and remand.

On August 3, 1999, police officers in Yreka, California, arrested plaintiff, a California resident who had briefly worked in Lane County, Oregon. In the course of processing his arrest, the officers discovered a gun in his truck. They also received a report, originating in Oregon and transmitted through the California Law Enforcement Telecommunications System, showing that plaintiff had three felony convictions. In fact, he had never been convicted of a felony; unbeknownst to him (or to anybody else), a computer error for which some person within Oregon government was responsible had attributed another individual's felony convictions to plaintiff. Based on that report, the police arrested plaintiff for being a felon in possession of a firearm and, over his protests that he was no felon, took him to the jail. He could not provide bail.

On August 25, 1999, before a preliminary hearing, plaintiff met with an attorney named Bergstrom who was retained for him by a friend. At the meeting, plaintiff told Bergstrom he had no felony convictions. Bergstrom assured plaintiff he was "going to get this worked out." Bergstrom employed a private investigator, Ellingson, and on September 1, 1999, Ellingson sent Bergstrom a memo reporting a conversation with a clerk at the Lane County Circuit Court suggesting that the felony convictions on plaintiff's criminal record actually belonged to an altogether different individual. The closing paragraph of the memo stated:

"It would appear that [plaintiff] is being inaccurately held responsible for these prior felony convictions, and that further investigation is warranted to establish he has no prior felony convictions, anywhere."

The parties dispute whether Bergstrom actually read the memo, but they agree that he did not give the information that it contained to plaintiff.

On September 8, 1999, the Siskiyou County district attorney's office investigated the Oregon criminal history report and discovered the error. At around the same time, plaintiff received a copy of the report. Under a caption consisting of cryptic text,[1] it identified him as a "convicted felon" and listed three crimes along with dates and docket numbers. These entries were in the following form:

"11-24-1998 OR020025J-CIR CRT EUGENE
CONVICTED-FELONY
ORS 163.205 CRIMINAL MISTREATMENT 1ST DEG
$15000-FINE 3Y PROB DOCKET #/209815158"

Below the list of felony convictions, the report also contained the following information:

"OREGON STATE POLICE
IDENTIFICATION SERVICES SECTION
3772 PORTLAND ROAD NE
SALEM, OREGON 97303-2500
OR0SP0000        (503) 378-3070"

At a September 15 hearing, the California court conditionally released plaintiff. On September 22, 1999, one week after his release and exactly 180 days before he filed his claim against the state, plaintiff and a friend drove from California to Springfield, Oregon, where plaintiff had received some traffic

---

[1] For example, the first seven lines read:

"4kyP006110 . I*
FR.ORSIR0000
17:44 08/03/1999 06768
17:44 08/03/1999 21331 CA0470900
*YKP0006110
TXT
PUR / F.ATN / GILMAN.SID / OR12682938.DPT / YREKA POLICE DEPARTMENT.
BLD/YREKA POLICE.ADR/412 W MINER ST.CIS/YREKA, CA ZIP/96097"

tickets. At the municipal court, they showed plaintiff's criminal history report to a clerk. She directed them to the Lane County courthouse. There, a clerk discovered what the investigator had discovered earlier: the report erroneously attributed another person's felony convictions to plaintiff. One hundred eighty days later, the state received notice of plaintiff's tort claim.

██  The outcome of this case hinges on what plaintiff knew (or should have known) and when he knew it (or should have known it). Under ORS 30.275(1), "[n]o action arising from any act or omission of a public body" may be maintained unless the plaintiff gives the public body notice "within 180 days after the alleged loss or injury." The 180-day period does not begin to run until the plaintiff knows or, in the exercise of reasonable care should know, facts that would make an objectively reasonable person aware of a substantial possibility that all three of the following elements exist: an injury occurred, the injury harmed one or more of the plaintiff's legally protected interests, and the defendant is the responsible party. *Gaston v. Parsons*, 318 Or 247, 256, 864 P2d 1319 (1994); *Adams v. Oregon State Police*, 289 Or 233, 239, 611 P2d 1153 (1980). If the plaintiff's actual or imputed knowledge falls short of the quantum necessary to establish one of the elements but that knowledge should trigger a duty to pursue a further inquiry, then the relevant date for starting the statutory period is not when the plaintiff learns the necessary facts but when the inquiry that those facts should trigger would disclose the existence of the element. *Greene v. Legacy Emanuel Hospital*, 335 Or 115, 123, 60 P3d 535 (2002).

█  In the present case, the parties agree that, as soon as California authorities informed plaintiff that he was under arrest for being a felon in possession of a firearm and incarcerated him on that charge, he knew that someone had invaded a legally protected interest. They also agree that he notified the state of his tort claim on March 20, 2000. Therefore, the dispositive question is whether a reasonable person would have perceived the state's role in causing the injury before September 22, 1999. *Schiele v. Hobart Corporation*, 284 Or 483, 490, 587 P2d 1010 (1978).

Plaintiff maintains that he neither knew nor should reasonably have known that the State of Oregon was responsible for the injury until his visit to the Lane County Courthouse on September 22. If he is correct, then the 180 days began on that date, and his notice was filed on time. The state argues that plaintiff either knew or should have known that Oregon officials caused his harm when he received a copy of the criminal history report before he was released from jail on September 15, and, in any event, that, before that date, his attorney had or should have had facts from which plaintiff could have concluded that the state was responsible—and that the attorney's knowledge is attributed to plaintiff. If the state is correct, the 180 days began before September 22 and plaintiff's notice was not filed on time. As noted above, after both sides moved for a directed verdict on the issue of notice, the trial court denied the state's motion and granted plaintiff's. On appeal, the state assigns error to both the denial and the grant.

We begin with the state's contention that the trial court erred in denying its motion. We review for errors of law, viewing the facts and all reasonable inferences in the light most favorable to plaintiff because he is the nonmoving party with respect to this assignment of error. *Mauri v. Smith*, 324 Or 476, 479, 929 P2d 307 (1996). The inquiry, therefore, is whether, under the correct legal principles, a rational juror could have found only in favor of the state.

The state's first contention centers on plaintiff's actual knowledge of the contents of his Oregon criminal history report. According to the state, that document contained information from which plaintiff learned (or should have learned) with substantial certainty that Oregon was to blame for his erroneous incarceration. At the least, the state argues, it imposed on him a duty to make further inquiry to the Oregon State Police at the telephone number located below the list of felonies. We disagree. One witness, a professional investigator, testified that, even if he had possessed all of the information on the form, he could not have determined that the error originated in Oregon. Given the appearance of the report and its coded contents, a rational factfinder would be entitled not only to believe that testimony but, independently

of it, to find that the form did not disclose Oregon's responsibility with substantial certainty. Further, nothing in the record compels the conclusion that a telephone call to the Oregon State Police at the listed number would have produced information sufficient to allow plaintiff to discern Oregon's role; for that reason, the form did not put him on "inquiry" notice. *Greene*, 335 Or at 123. In sum, we reject the state's argument that plaintiff's knowledge of the information on the criminal history form provided him, as a matter of law, with sufficient knowledge of Oregon's responsibility so as to begin the limitation period.

The state's alternate argument centers on imputed as opposed to direct knowledge. The parties agree that plaintiff's attorney, Bergstrom, did not *actually* tell plaintiff about the information that private investigator Ellingson received from the clerk in Lane County—information that at least strongly suggested that Oregon was responsible for plaintiff's incarceration. The state, however, contends that the information must be *imputed* to plaintiff by operation of law. An agent's knowledge acquired within the scope of the agency is imputed to the principal, regardless of whether the agent actually communicates that knowledge to the principal. *Hogan v. Alum. Lock Shingle Corp.*, 214 Or 218, 228, 329 P2d 271 (1958); *Marian Estates v. Employment Dept.*, 158 Or App 630, 636, 976 P2d 71 (1999). Insofar as that rule applies to Bergstrom, it does not help the state. The only relevant information Bergstrom, the agent, might have had was the report from Ellingson, the investigator, and whether Bergstrom actually had that information is a disputed fact question; a rational factfinder could decide on the record developed at trial that Bergstrom never read the letter and therefore never had the knowledge allegedly imputed.

The state also argues, however, that Ellingson's information should be imputed to plaintiff. That imputation could happen in either of two ways: directly, if Ellingson was plaintiff's agent, or indirectly, if Ellingson was Bergstrom's agent and, thereby, plaintiff's subagent. On the record before us, we reject both theories.

Regarding the first, the state produced no evidence that plaintiff ever met Ellingson, ever corresponded with

him, or, for that matter, ever even knew of his existence, much less had an agency relationship with him.

The indirect or subagency theory is also unconvincing. As a threshold matter, the state never made that argument to the trial court. The argument, therefore, was not adequately preserved; the trial court never had the opportunity to consider it and therefore cannot be faulted for erroneously rejecting it. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (party must provide trial court with specific enough explanation of an objection to allow the trial court to consider and, if necessary, correct it).

On the other hand, the state did argue a theory based on imputation and, in particular, imputation of Ellingson's knowledge to plaintiff, under the direct theory discussed and rejected above. In other words, the state raised the issue of Ellingson-to-plaintiff imputation, but it did not make the specific argument based on the subagency relationship. Under the preservation guidelines set out in *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988), which indicate that raising a particular argument is less important than raising a general issue or identifying a particular source, plaintiff's subagency argument is possibly cognizable on appeal.

In any event, the argument is not persuasive. It is true that a few courts outside of Oregon have extended the rule of imputation so as to encompass knowledge possessed by a subagent who is not directly employed by the principal. *E.g., Trane Co. v. Gilbert*, 267 Cal App 2d 720, 727, 73 Cal Rptr 279 (1968); *Carpenter v. German-American Ins. Co.*, 135 NY 298, 302, 31 NE 1015, 1016 (1892). These courts appear to adopt the position of *Restatement (Second) of Agency* § 283(a) (1958), which states, "[T]he rules * * * which apply to the liability of a principal because of notice through an agent apply to the liability * * * of a master or other principal because of the knowledge of * * * a * * * subagent."). Oregon courts have not adopted this extension of the imputation rule, and we are not inclined to do so here.

The imputation rule adopts as an unrebuttable presumption the legal fiction that an agent always communicates to the principal all information that it should communicate within the scope of the agency, even if the party

seeking to prove the communication cannot actually do so. *Saratoga Inv. Co. v. Kern*, 76 Or 243, 252-53, 148 P 1125 (1915); *Tri-Met, Inc. v. Odighizuwa*, 112 Or App 159, 164, 828 P2d 468 (1992). Like all irrebuttable presumptions and legal fictions, agent-to-principal imputation has a margin of error: in some situations, the presumed communication does not, in fact, occur. In a subagent-to-agent-to-principal imputation, the presumptions are stacked, and the margin of error increases exponentially. That fact requires a reweighing of the costs and benefits of adopting the presumption.

And even if such a reweighing were to lead us to adopt the extended version of the presumption, it remains an equitable rule that is not appropriate in every circumstance. *First Ala. Bank v. First State Ins. Co. Inc.*, 899 F2d 1045, 1060 (11th Cir 1990). One of the underlying bases for the imputed knowledge presumption is the simple policy choice that, as between the principal, who willingly appointed the agent, and an innocent third party, the principal should bear the risk that the agent will not fulfill its communicative duties. *E.g., FDIC v. Smith*, 328 Or 420, 429, 980 P2d 141 (1999); *Southport Little League v. Vaughan*, 734 NE 2d 261, 275 (Ind App 2000). Where the party seeking to invoke the imputation is not itself innocent, the equitable foundation beneath the rule crumbles, leaving the parties on more equal footing. *Id.* In the present case, the state is not an innocent party—it was negligent. Thus, the rationale underlying the equitable rule does not exist here.

For the foregoing reasons, we decline to extend the rule of imputation so that it applies between plaintiff and the subagent, Ellingson. Plaintiff, then, had neither actual nor imputed knowledge of the information contained in Ellingson's memo to Bergstrom. A rational factfinder could have concluded that the only relevant knowledge plaintiff did have that might have indicated that Oregon was responsible for his situation—the information on the computer-generated criminal history report—was not sufficient to establish the beginning of the limitation period. The court did not err in denying the state's motion for a directed verdict.

The court did err, however, in granting plaintiff's motion. Although the undisputed fact that plaintiff received

the criminal history report does not, as the state argues, *compel* the conclusion that plaintiff knew or should have known of Oregon's responsibility, the form does contain enough information so that a rational factfinder *could* reach that conclusion. Embedded in the report's text are plaintiff's name, the phrase "convicted felon," and three starred items that contain the name of a crime and the notation "convicted-felony." Beneath those items, the form contains the name, address and phone number of the Oregon State Police, identified as such. Those entries suffice to create an issue of fact regarding what a reasonably prudent person might infer from the report. That conclusion, in turn, suffices to render erroneous the trial court's decision to grant plaintiff's motion for a directed verdict on the issue of timeliness.

Reversed and remanded.