Argued and submitted September 9, reversed and remanded December 10, 2014, petition for review dismissed March 11, 2015 (356 Or 837)

In the Matter of the Compensation of
Rebecca M. Muliro, Claimant.

DEPARTMENT OF CONSUMER
AND BUSINESS SERVICES,
Workers' Compensation Division;
and Compro, Inc.,
*Petitioners,*

*v.*

Rebecca M. MULIRO;
Liberty Northwest Insurance Corporation;
Adams & Gray Home Care - Marquis Home Health;
and Assured at Home,
*Respondents.*

Workers' Compensation Board
1103496, 1102720; A152594

341 P3d 131

Greg Rios, Assistant Attorney General, argued the cause for petitioner Department of Consumer and Business Services. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

R. Adian Martin argued the cause for respondent Rebecca M. Muliro. With him on the brief was Ransom, Gilbertson, Martin & Ratliff, LLP.

David O. Wilson filed the brief for respondents Liberty Northwest Insurance Corporation and Adams & Gray Home Care - Marquis Home Health.

No appearance for petitioner Compro, Inc.

No appearance for respondent Assured at Home.

Julie Masters filed brief *amicus curiae* for SAIF Corporation and Samaritan Health Services.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

**TOOKEY, J.**

The Workers' Compensation Division of the Department of Consumer and Business Services (DCBS) seeks judicial review of an order of the Workers' Compensation Board (the board) affirming an administrative law judge's (ALJ) order directing payment of supplemental disability to claimant. Specifically, DCBS challenges the board's conclusion that, although claimant failed to timely notify her employer's insurer that she had multiple employers, as required by ORS 656.210(2)(b)(A), the insurer had "imputed notice" of claimant's secondary employment, because claimant's employer was aware that she had other employers. We conclude that the board erred when it applied the principle of imputed notice to the circumstances in this case, contrary to the requirements set forth in ORS 656.210(2)(b)(A). Accordingly, we reverse and remand the board's order.

We begin with an overview of the statutory provisions that are relevant to this case. Under ORS 656.210, an injured worker can receive temporary total disability compensation in an amount based on the worker's wages.[1] If the worker has one job, the amount of compensation is based on the worker's weekly wage from that one job. ORS 656.210(2)(a)(A). Further, "[f]or workers employed in more than one job at the time of injury," the calculation factors in "all earnings the worker was receiving from all subject employment." ORS 656.210(2)(a)(B). Replacement of lost wages for the injured worker's secondary employment is called "supplemental disability." OAR 436-060-0035(1)(e).

Pursuant to ORS 656.210(2)(b), an injured worker is not entitled to supplemental disability,

"unless the insurer, self-insured employer or assigned claims agent for a noncomplying employer receives:

---

[1] ORS 656.210(1) provides, in part:

"When the total disability is only temporary, the worker shall receive during the period of that total disability compensation equal to 66-2/3 percent of wages, but not more than 133 percent of the average weekly wage nor less than the amount of 90 percent of wages a week or the amount of $50 a week, whichever amount is less."

"(A)   Within 30 days of receipt of the initial claim, notice that the worker was employed in more than one job with a subject employer at the time of injury; and

"(B)   Within 60 days of the date of mailing a request for verification, verifiable documentation of wages from such additional employment."

The relevant facts of this case are undisputed. Claimant was a certified nursing assistant employed by Adams & Gray Home Care - Marquis Home Health (Adams & Gray) when she sustained a workplace injury. Claimant filed a workers' compensation claim with Adams & Gray's insurer, Liberty Northwest Insurance Corporation (Liberty). At the time of her injury, claimant also worked for two other employers, and Adams & Gray was aware that claimant had other employers. However, when filling out and signing various workers' compensation forms, claimant did not check the boxes that would have indicated that she had more than one employer[2] and, within 30 days of filing her claim, neither claimant nor Adams & Gray had communicated to Liberty that claimant had secondary employment.

Approximately nine months after her injury, claimant, through counsel, informed Liberty that she had had multiple employers at the time of her injury, and she requested payment of supplemental disability. Liberty elected not to process the claim for supplemental disability, so DCBS, through its designated agent, ComPro, Inc., processed the claim.[3] ComPro later informed claimant that she was not eligible for supplemental disability because Liberty had not received notice of claimant's secondary employment within 30 days of her claim, as required by ORS 656.210(2)(b)(A).

---

[2] According to the record, claimant signed at least two forms related to her claim that were later submitted to Liberty—a Liberty claim form (Form 801) and a DCBS "Worker's and Physician's Report for Workers' Compensation Claims" (Form 827). On each form, there is a box above the signature line labeled, "Check here if you are employed w/more than one employer[,]" or, "Check here if you have more than one employer." Claimant did not check the box on either form.

[3] An employer may elect not to pay supplemental disability benefits, in which case DCBS will administer and pay the benefits directly or assign the responsibility to an agent. ORS 656.210(5)(b); OAR 436-060-0035(1)(a). ComPro administers supplemental disability benefits on behalf of DCBS when an insurer elects not to process and pay such benefits. *See Valencia v. GEP BTL, LLC*, 247 Or App 115, 119, 269 P3d 65 (2011) (so stating).

After a contested case hearing, an ALJ concluded that claimant was eligible for supplemental disability and ordered ComPro to process her claim. The ALJ determined that, because Adams & Gray was aware of claimant's secondary employment at the time of her injury, Liberty had "imputed" notice that claimant had multiple employers.

ComPro and DCBS appealed the decision to the board. In its order, a majority of the board affirmed the ALJ's order, concluding that "the 'notice' requirement of ORS 656.210(2)(b)(A) has been met when the employer receives information regarding secondary employment." The board "acknowledge[d] that the express language of ORS 656.210(2)(b)(A) provides that notice must be received by the 'insurer,'" but stated that "it is well settled that, with respect to the processing of claims, notice provided by a claimant to an insured employer may be imputed to the insurer." (Internal quotation marks omitted.) (Citing *SAIF v. Abbott*, 103 Or App 49, 53, 796 P2d 378 (1990), *modified on recons*, 107 Or App 53, 810 P2d 878 (1991); *Nix v. SAIF*, 80 Or App 656, 660, 723 P2d 366, *rev den*, 302 Or 158 (1986); *Anfilofieff v. SAIF*, 52 Or App 127, 134-35, 627 P2d 1274 (1981).)

The board determined that, under the circumstances of this case, "the employer's failure to provide timely, correct, and complete information to the insurer did not insulate the insurer from its processing responsibilities." According to the board, even if claimant had the burden to provide notice of secondary employment, "[c]laimant *did* provide the information, albeit to the employer," and the "issue of whether [the required] information should be imputed from the employer to the insurer is a matter distinct from the express statutory language." (Footnote omitted; emphasis in original.) Further, the board explained:

"Again, we recognize that the employer (unless it is self-insured) has no express statutory obligation to pass information/knowledge to its insurer or statutory administrator, and no responsibilities under the Director's rules for processing supplemental disability claims. Notwithstanding this absence of contractual or regulatory responsibility, ORS 656.210(2)(b)(A) is focused on the

'notice' of a supplemental disability claim (and its components), not on 'payment' of benefits for such a claim. Thus, we conclude that the 'notice' requirement of ORS 656.210(2)(b)(A) has been met when the employer receives information regarding secondary employment. To do otherwise would allow an employer to nullify a supplemental disability claim by simply refraining from forwarding otherwise timely received supplemental disability information to its insurer. We decline to interpret the statutory scheme in such a manner."

DCBS now seeks reversal of the board's final order.[4]

The issue in this case concerns a question of statutory interpretation: whether an employer's knowledge that a worker has secondary employment is sufficient to establish the notification required by ORS 656.210(2)(b)(A). When construing a statute, our goal is to discern the legislature's intent by examining the text and context of the statute, and the legislative history, if useful. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

We begin with the text of ORS 656.210(2)(b)(A). As noted, ORS 656.210(2)(b)(A) establishes, as a prerequisite to supplemental disability, that "the insurer, self-insured employer or assigned claims agent for a noncomplying employer" receive "[w]ithin 30 days of receipt of the initial claim, notice that the worker was employed in more than one job with a subject employer at the time of injury[.]" As DCBS notes, under the express terms of the statute, an insurer must actually "receive," within 30 days, "notice" that a worker had secondary employment at the time of injury. Based on the text of the statute, DCBS argues that an employer's knowledge of secondary employment cannot be imputed to the insurer, because the insurer has not actually received the notice, as expressly required by statute. *See Benson v. State of Oregon*, 196 Or App 211, 218-19, 100 P3d 1077 (2004) (under common law of agency, "[t]he imputation rule adopts as an unrebuttable presumption the legal fiction that an agent always communicates to the principal all information that it should communicate within the scope

---

[4] Respondents Liberty and Adams & Gray also contend that the order should be reversed, and they adopt and incorporate DCBS's arguments on appeal.

of the agency, even if the party seeking to prove the communication cannot actually do so"). DCBS contends that the statute spells out who must receive notice ("the insurer, self-insured employer or assigned claims agent for a noncomplying employer"), and it makes no provision for any type of notice to those specified entities, other than actual notice.

For her part, claimant does not dispute that the terms of ORS 656.210(2)(b)(A) require that the insurer receive notice of an injured worker's secondary employment, but she nevertheless contends that the "long and well-known common law surrounding imputed knowledge and notice" provides informative context for the statute, and that notice to a primary employer can be "imputed" to the insurer, thereby satisfying the statutory notice requirement. In other words, she contends that, because Adams & Gray was aware that she had secondary employment at the time of the injury, Liberty also had knowledge of that employment. According to claimant, Liberty had "actual notice" of claimant's secondary employment because it "had the means of informing itself, and ought to have done so." Thus, we turn to the question of whether our cases suggest a legislative intent that is otherwise not expressed in the plain terms of ORS 656.210(2)(b)(A).

As "context," claimant cites three of our previous cases in support of her argument that the imputation doctrine applies to the circumstances of this case. First, claimant cites *Anfilofieff*, in which we addressed the issue of whether penalties under ORS 656.262(8) (1979)[5] were authorized against SAIF for an employer's unreasonable conduct related to the processing of claims. 52 Or App at 133-35. In that case, the employer "did not truthfully describe the cause of the injury or his relationship with [the worker]," "altered the scene [of the injury] in order to cover up the true facts," and "gave false information to the doctor as to

_____

[5] ORS 656.262(8) (1979) provided:

. "If the corporation or direct responsibility employer or its insurer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the corporation or direct responsibility employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382."

how the injury occurred." *Id.* at 135. Although ORS 656.262 (1979) did not specifically authorize penalties against an insurer for the unreasonable conduct of its insured employer, we interpreted the statute to "authorize penalties to be paid by SAIF to the extent unreasonable conduct of a contributing or noncomplying employer causes or contributes to the delay or refusal of compensation." *Id.* at 135. In reaching that conclusion, we noted that, "[i]f a direct responsibility employer or its insurer is guilty of unreasonable conduct, the employer is liable for penalties," and we did "not believe the legislature intended to treat noncomplying employers or other employers insured by SAIF differently or to insulate their unreasonable conduct from penalties." *Id.* at 134. We also noted that "[c]onstruing ORS 656.262(8) literally not to authorize penalties for unreasonable conduct of employers insured by SAIF would substantially detract from" the penalty provision's purpose of inducing "prompt and reasonable payment of compensation so the injured worker will not be subjected to protracted periods of economic hardship." *Id.* at 134-35.

This court reached a similar conclusion in *Nix.* That case involved the same penalty provision discussed in *Anfilofieff,* which had since been amended and renumbered as ORS 656.262(10) (1985).[6] *Nix,* 80 Or App at 658-59, 659 n 3. Citing *Anfilofieff,* we concluded that, although SAIF had not engaged in unreasonable conduct, a penalty and attorney fees could be assessed against SAIF for an unreasonable delay in payment of compensation based on the employer's failure to report the worker's accident to SAIF within five days, as required by ORS 656.262(3) (1985),[7] because the unreasonable conduct of the employer was "legally attributable" to SAIF. *Id.* at 660.

Finally, in *Abbott,* the employer's insurer, SAIF, denied responsibility for two previously accepted claims on

---

[6] ORS 656.262(10) (1985) provided:

"If the insurer or self-insured employer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer or self-insured employer shall be liable for an *additional amount up to 25 percent of the amounts* then due plus any attorney fees which may be assessed under ORS 656.382."

[7] ORS 656.262(3) (1985) provided, in part, "Employers shall, immediately and not later than five days after notice or knowledge of any claims or accidents which may result in a compensable injury claim, report the same to their insurer."

the ground that the injured worker had misrepresented his status as an employee and that he was not a covered employee. 103 Or App at 51-53. On judicial review, the issue was whether SAIF had shown that the worker had made a sufficiently material misrepresentation to justify its backup denial of compensation. *Id.*; *see also Ebbtide Enterprises v. Tucker*, 303 Or 459, 465-67, 738 P2d 194 (1987) (insurer may not deny a previously accepted claim more than 60 days after receiving notice of the claim, without a showing of fraud, illegality, or material misrepresentation). We concluded that the worker's misrepresentations "were not sufficiently material to justify SAIF's backup denial," because the worker's supervisor "knew what [the worker's] status at the mill was and that he had filed the claims," and "[t]hat knowledge was attributable to [the employer] as well as to its insurer, SAIF." *Abbott*, 103 Or App at 53 (citing *Colvin v. Industrial Indemnity*, 301 Or 743, 725 P2d 356 (1986); *Nix*, 80 Or App at 660).

In those cases, it is true that we held that the employer's conduct or knowledge of the circumstances could affect the obligations of the insurer. But the holdings in those cases must be understood in the contexts in which they arose. In *Anfilofieff*, we decided that a noncomplying employer's "clearly unreasonable" conduct "designed to avoid responsibility for the injury" made the insurer's delay that was caused by that conduct unreasonable. 52 Or App at 134-35. Similarly, in *Nix*, we stated that the employer's failure to report the worker's injury, as required by statute, was unreasonable conduct that was "legally attributable to his insurer, SAIF," for purposes of making the delay in compensation unreasonable under ORS 656.262. 80 Or App at 660. In *Abbott*, we concluded that the worker's misrepresentations to both the employer and the insurer about his employment status and injury claims were not sufficiently material to justify a backup denial, because the worker's supervisor knew what the worker's status was and also knew that the worker had filed claims with the insurer, and that knowledge was attributable to both the employer and the insurer. 103 Or App at 52-53. In all three cases, we found the employer's conduct or knowledge relevant to assessing the quality of an insurer's conduct or state of mind. None of those cases,

however, addressed the particular question presented in this case—that is, whether an employer's knowledge that a worker has secondary employment is sufficient to establish the notification that a worker is required to provide to the insurer under ORS 656.210(2)(b)(A). In other words, the issue before us concerns whether a worker's conduct in providing information to an employer satisfies the worker's notice requirement under ORS 656.210(2)(b)(A). Thus, we do not agree with claimant that *Anfilofieff, Nix,* and *Abbott* provide helpful context for an interpretation of the notice requirement in ORS 656.210(2)(b)(A), and claimant has not offered any other helpful context or legislative history supporting her construction of the statute.

Instead, as urged by DCBS, we find this court's reasoning in *Valencia v. GEP BTL, LLC,* 247 Or App 115, 269 P3d 65 (2011), instructive. In *Valencia,* the insurer received notice of the claimant's secondary employment, as required by ORS 656.210(2)(b)(A), but the claimant failed to provide "verifiable documentation," as required by ORS 656.210(2)(b)(B). 247 Or App at 124; *see also* OAR 436-060-0035(1)(f) (defining "verifiable documentation"). ComPro[8] sent a letter asking the claimant for more information, but after receiving no response, it notified the claimant that he was ineligible for supplemental disability benefits. *Valencia,* 247 Or App at 121. On judicial review, the issue was whether ComPro acted unreasonably when it denied the claimant's claim instead of independently seeking out additional information from the claimant's secondary employers in order to determine the claimant's eligibility for supplemental disability benefits. We concluded that

> "the statutes and administrative rule imposed no such investigative obligation on ComPro. ORS 656.210(2)(b) makes clear that, as a prerequisite to eligibility for supplemental disability, it is the claimant's obligation to provide verifiable documentation of secondary employment. OAR 436-060-0035 sets out the information that a claimant is required to submit to establish verifiable documentation.

---

[8] In *Valencia,* as in this case, the insurer elected not to process the claimant's supplemental disability claim; consequently, ComPro processed the claim on behalf of DCBS. *Id.* at 119.

> Thus, we conclude that ComPro had no independent obligation to seek out information necessary to determine claimant's weekly wage or to determine that claimant was a subject worker on the date of his injury. Nor did it have an obligation to confirm whether claimant was an employee or an independent contractor. It was claimant's obligation to provide that information."

*Id.* at 125 (citation omitted).

Under our decision in *Valencia,* an injured worker seeking supplemental disability has the burden of satisfying the requirements of ORS 656.210(2)(b); when the worker does not provide the necessary information, the entity responsible for processing the claim is not obligated to independently seek that information out.[9] As an extension of that reasoning, we reject claimant's argument that Adams & Gray's knowledge of claimant's secondary employment should be imputed to Liberty because Liberty "had the means of informing itself, and ought to have done so."

We agree with DCBS that ORS 656.210(2)(b)(A) spells out who must receive notice and makes no provision for any type of notice to those specified in the statute, other than actual notice. The board's application of the principle of imputed notice to the circumstances of this case essentially amended ORS 656.210 to allow eligibility for supplemental disability by notification of secondary employment to the insurer *or to the employer.* That was legal error.[10] *See* ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or

---

[9] Claimant contends that *Valencia* is distinguishable from this case because ComPro is not an "insurer" and therefore does not have the same relationship with the employer that the employer's insurer would have. We do not agree that *Valencia* is distinguishable on that basis, because ORS 656.210(2)(b) does not set forth different obligations depending on whether the claim is processed by an employer's insurer or by ComPro.

[10] We also note that the director of DCBS has adopted OAR 436-060-0035(6) to implement the provisions of ORS 656.210(2)(b)(A). That rule, which is not challenged here, provides, in part, "A worker is eligible [for supplemental disability] if * * * [t]he worker provides notification of a secondary job to the insurer within 30 days of the insurer's receipt of the initial claim[.]" OAR 436-060-0035 was adopted pursuant to ORS 656.210(6), which grants DCBS broad rulemaking authority regarding the payment and reimbursement of supplemental disability. The board acknowledged that the rule requires the worker to notify the insurer of secondary employment, but reasoned that that requirement is satisfied when the worker provides notice to the employer. For the same reasons discussed above, we disagree.

in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted[.]").

Because claimant did not provide notice to Liberty that she had secondary employment within 30 days of the receipt of her initial claim, the board erred in affirming the ALJ's order directing DCBS, through ComPro, to pay claimant supplemental disability. Accordingly, we reverse and remand the board's order.

Reversed and remanded.